**GENERAL TRADES SCHOOL, Inc. et al.**

v.

**UNITED STATES.**

**No. 14764.**

United States Court of Appeals Eighth Circuit.

May 11, 1954.

Rehearing Denied June 18, 1954.

Frank P. Motherway, St. Louis, Mo., for appellants.

Harry Richards, U. S. Atty., W. Francis Murrell, Asst. U. S. Atty., and Joseph F. Murphy, Asst. Chief Atty., Vet-

erans' Administration, St. Louis, Mo., submitted brief for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

The question is as to the validity of an administrative subpoena issued by the Administrator of Veterans' Affairs, on which the District Court had ordered a compliance.

General Trades School, Inc., of St. Louis, Missouri, had contracted with the Veterans' Administration to give training in auto body repairing to veterans, under Public Law 346, 78th Cong., 58 Stat. 287, 38 U.S.C.A. § 701. The Administration was to pay a certain charge as tuition, and for necessary books, supplies and equipment "at cost to school, plus 10% for handling."

The school prepared a schedule, which was attached to and made a part of the contract, of "required books, supplies and equipment and approximate price." The schedule, captioned "Tool List", set out 22 items and a price figure for each, with the total estimated cost shown amounting to $56.00.

Statements submitted by the school from time to time were apparently paid by the Veterans' Administration in ordinary course, until the General Accounting Office sent it a communication advising it that a check made by that Office indicated, among other things, that the school had been billing the Administration for tools, "at an average increase over cost of $18.00 per tool kit." The communication also suggested that not only had the school overcharged for the tools as separate items, but that it further had included the cost of them in its consumable supplies and so seemingly had received duplicate payment for them. When the Administration thereafter requested the privilege of examining the school's books and records, the school refused to permit it to do so.

The Administrator of Veterans' Affairs then issued an administrative subpoena, requiring the president of the school to appear and give testimony and to bring with him, for the period that the contract had been in effect, "all records pertaining to the purchase of tools and supplies including invoices, contracts pertaining to the purchase of tools and supplies, and individual folders pertaining to all students who have been in attendance * * * and for which claims have been or will be presented to the U. S. Veterans Administration for tuition, cost of tools and supplies, and any other evidence in your possession bearing on this subject."

The president ignored the administrative subpoena, and the Administrator accordingly made application to the District Court for a compliance order. The application was resisted by the president and the school, on the grounds that the Administrator had no authority in law to issue any such subpoena and that the subpoena was for other reasons also invalid. The court held that the subpoena was in general valid and entered an order of compliance, requiring the president of the school to appear and give testimony and to produce the files and records requested in relation to "the Veterans Administration investigation to determine the cost of tools, supplies and equipment furnished students under Public Law No. 346, 78th Congress, as amended." The order further made its own specification of the things required to be produced, as consisting of "all records * * * pertaining to the procurement and net prices charged to and paid by said General Trades School, Inc., for tools, supplies and equipment furnished students * * * under Public Law No. 346, 78th Congress, as amended," throughout the contract period, "and more particularly any and all general accounting records, files, folders, correspondence, price lists, records of inventory, physical inventories, records of accounts payable, accounts payable, cash disbursements, cash receipts, cancelled checks and any other evidence in the possession of the said institute bearing on said cost of tools, supplies and equipment furnished by the said General Trades School, Inc."

 The principal contention on this appeal, taken by the president and the school, is that the Administrator of Veterans' Affairs had been granted no authority by Congress to issue investigative subpoenas in relation to the educational and vocational-training program for veterans under Public Law 346, 78th Congress, 58 Stat. 287. Such subpoena power as is possessed by the Administrator admittedly rests upon 49 Stat. 2033, 38 U.S.C.A. § 131,[1] which, among its grants, authorizes the issuing of subpoenas by him "to make investigations and examine witnesses upon any matter within the jurisdiction of the Administration."

It is argued that the word "jurisdiction" in legal use has application to the exercise of judicial or quasi-judicial power only; that the Veterans' Administration has no such power to make adjudications or determinations as to the rights or duties of educational or vocational institutions under existing contracts entered into between the Administrator and such institutions for veteran-training; and that the Administrator therefore was without any authority to issue a subpoena to investigate the cost of the tools and equipment which the school was furnishing under its contract, on the purported basis of the question being a "matter within the jurisdiction of the Administration."

But this concept of "jurisdiction", in relation to the subpoena power under § 131, is one that is both artificial and unrequired. "Jurisdiction" is not always used to connote the exercising of judicial or quasi-judicial power. "It is a term in general use, of comprehensive and large import, having different meanings, dependent on the connection in which it is

found and the subject matter to which it is directed", and it is in fact "often used without any determinate signification." 50 C.J.S. pp. 1089, 1090.

And so it has been recognized that a legislative use of the term "jurisdiction", in relation to the functioning of an administrative agency, is not necessarily one of legal technicalness but may be simply a general characterization of the field of powers and duties of that agency in administering or enforcing law. See United States v. White, D.C. S.D.Cal., 69 F.Supp. 562, 564; United States v. Sanders, D.C.S.D.Tex., 42 F. Supp. 436, 439. Cf. also Sanchez v. United States, 1 Cir., 134 F.2d 279, 283. The recent case of Carroll Vocational Institute v. United States, 5 Cir., 211 F.2d 539, has specifically held that it is in this sense that the word "jurisdiction" was intended to be used in 38 U.S.C.A. § 131. We agree.

The language of § 131 may again be noted, that "For the purposes of the laws administered by the Veterans' Administration, the Administrator * * * shall have the power to issue subpenas * * * to make investigations * * * upon any matter within the jurisdiction of the Administration." Public Law 346 specifically commits the administration of its educational and training provisions to the Administrator. 58 Stat. 290. He is authorized to make necessary rules and regulations. Ibid. He has the power to approve or disapprove institutions as being qualified to furnish education or training under the Act. Id. p. 289. He is authorized to fix "fair and reasonable compensation" for such education or training, where the institution has no established tuition fee or where its established fee is found by the Ad-

1. "For the purposes of the laws administered by the Veterans' Administration, the Administrator of Veterans' Affairs, and those employees to whom the Administrator may delegate such authority, to the extent of the authority so delegated, shall have the power to issue subpenas for and compel the attendance of witnesses within a radius of one hundred miles from the place of hearing to require the production of books, papers, documents, and other evidence, to take affidavits, to administer oaths and affirmations, to aid claimants in the preparation and presentation of claims, and to make investigations and examine witnesses upon any matter within the jurisdiction of the Administration. * * * *" 38 U.S.C.A. § 131.

ministrator to be inadequate compensation. Ibid. He is charged with the obligation and responsibility of making payment for tuition and necessary books, supplies and equipment furnished by the institution. Ibid.

On all this, it seems to us only a natural statutory construction to view the Administrator's responsibility for the making of proper payments, in disbursing the vast amount of public funds appropriated for the veterans' educational and training program, as reasonably implying some measure of right and duty, if any question arises in his mind, to check the propriety of any statement submitted by such an institution—and even more compellingly so where the charges made are required to rest upon a "cost-plus" basis—and further to regard this implied right and duty to check as necessarily falling within the facilitating subpoena power of § 131 in relation to the making of investigations "upon any matter within the jurisdiction of the Administration." See again Carroll Vocational Institute v. United States, supra, 211 F.2d at page 541.

■ It is further contended, however, that the Administrator is not entitled to issue any subpoena against a school or its officers, because of the express prohibition of Public Law 346 that "No department, agency, or officer of the United States, in carrying out the provisions of this part, shall exercise any supervision or control, whatsoever, over * * * any educational or training institution * * *." 58 Stat. 289. This prohibition obviously was intended to assure that there would be no attempt at federal dictation, under the veterans' educational and training program, over any institution, in its courses, standards, policies, processes or other internal affairs. But the mere auditing or verifying, from existing records or data, within relevant and undisrupting bounds, of the correctness of a claim submitted by an educational or training institution for payment by the Administration from public funds, can hardly be called an exercise of federal supervision or control over the institution. It is not an interference with the school's internal affairs and cannot on that ground be held to be outside the power of the Administrator of Veterans' Affairs to make investigation and use the subpoena power in ascertaining whether the institution has submitted proper charges for its training.

■ Again, it is contended that, even if the Administrator be regarded as having authority in general to issue such a subpoena, a compliance should not be required in the present situation, because the school has requested the Veterans' Education Appeals Board, 64 Stat. 338, 339, to grant it certain relief in its veteran-training relationship. The record and the briefs are not entirely clear as to what the school is attempting to accomplish by its application to the Appeals Board. As nearly as we can tell, it is apparently asking the Board to declare that it ought, on the basis of the charges made by it to non-veterans, and of general fairness and reasonableness in the contract situation, to be allowed to make a charge to the Veterans' Administration for its course of $442.00 per student. This is the only prayer contained in its application, and we therefore assume that its object is to get the separate tool-charge provision of the contract superseded, if possible, as a matter of enabling it to make a flat charge and thus eliminate any future question on its tool costs. We also take it that the Veterans' Administration has refused to agree to any such modification of the contract. But whatever might be the hopes of the school in making the application, or even the possible outcome thereof, we do not think that this required the District Court, as a matter of law or necessary discretion, to deny or stay the compliance order here and thus delay the Administrator's investigation and ascertainment for administrative purposes of the fact of whether overcharges and duplications of charges for tools had in the past been occurring and been paid for, under the contract as it then and still existed. The Administrator's ascertainment of this fact in relation to

his duty and responsibility for the public funds which had been paid out would not deprive the school of its right to a day in court on any fraud or mistake that the Administrator might thereafter contend had existed. Cf. Carroll Vocational Institute v. United States, supra, 211 F.2d at page 541.

■ It is also contended that any right which might otherwise exist to examine the records covered by the compliance order is legally excluded by the fact that the contract contained a provision for the keeping and making available of certain required records only, as follows: "The Contractor shall maintain records of attendance, deportment, and progress of veterans in training under this contract and shall make available such records and furnish such reports to the Veterans Administration at such intervals as may be mutually determined and as may be necessary and required by the Veterans Administration to administer the training of the veterans as required by law." This requiring of attendance, deportment and progress records to be kept and made available has, however, no relationship to the matter of the Administrator's general right under the statute to make certain that tools were not being charged for on an improper basis in the statements submitted to him by the school for payment. And we are unable to see any basis for holding that, because the contract required certain records to be kept for a special purpose in one phase of the contract relationship, it therefore should be regarded as having been mutually intended, or as necessarily legally operating, to cut off the Administrator's right in other matters within his jurisdiction to examine any records of the school which were not contractually required to be kept and made available. The Administrator's power to request the production of books and records in relation to an arising question, "upon any matter within the jurisdiction of the Administration", as an incident of his power to make investigations, does not depend legally upon whether such existing books and records as may be relevant to the investigation have been required to be kept and made available as a matter of contract obligation.

The final contention made is that the subpoena was unreasonable and also oppressive in the situation involved. Technical arguments of unreasonableness are directed against the language of the administrative subpoena, as lacking sufficient particularity in designation, not being definite enough as to time limitation, and having too broad a scope in being made to cover tuition fees and other matters not related to tool charges. The merit, if any, of these technical arguments we need not examine, for the obligation now resting upon appellants is no longer that of the language of the subpoena but that of the more restricted language of the compliance order, which has made a sufficient express specification of the records to be produced, of the relevance of their relationship to the investigation, and of the period required to be covered, so that the arguments directed against the subpoena are in any event without any possible basis of validity as to the order.

As to the argument that the subpoena was oppressive, because the Veterans' Administration had some time previously, before its receipt of the letter from the General Accounting Office, been permitted by the school to go over its records and thus already had the information which the investigation was designed to elicit, the record does not satisfactorily establish that this examination had resulted in a sufficient obtaining of such information so as to require the District Court to accept this as constituting the fact. Nor is there any more merit in the suggestion that the General Accounting Office evidently must have had the information which the Administrator is seeking to obtain, when it wrote the communication to the Administration raising the question of the overcharges, and that the information thus was available to the Administrator from this source, so that, on this basis also, no further examination of the

**662**

school's records was necessary. That argument would only tend to imply that the fact of overcharges existed, as the letter of the General Accounting Office had suggested, and that the Administration had all the proof needed to confirm this fact. We do not believe that appellants intend or desire any such implication here.

On the record before us, as we have indicated, the District Court was entitled to view the situation as being one in which the Administrator was attempting to make a good-faith investigation of whether the question raised by the General Accounting Office, as to improper charges and payments for tools having been made, had or was without a valid basis; in which the investigating and ascertaining of the facts in this respect constituted an investigation upon a "matter within the jurisdiction of the Administration"; in which the production of books, papers and records, as directed by the compliance order, was a relevant aid to the making of the investigation; and in which the compliance that appellants were ordered to make was neither legally unreasonable nor oppressive in the circumstances shown.

Affirmed.