**L. C. CHAPMAN, Manager of the Regional Office of the Veterans Administration, Appellant,**

v.

**MAREN ELWOOD COLLEGE,**
Appellee.

No. 14057.

United States Court of Appeals
Ninth Circuit.
April 25, 1955.

Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney, Marcus A. Rowden, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Clyde C. Downing and Arline Martin, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Stahlman & Cooper, Blase A. Bonpane, Spencer E. Van Dyke, H. Allen Smith, Tobias G. Klinger, Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is a proceeding in the United States District Court to enforce an administrative subpoena issued to Maren Elwood College by the Manager of a Regional Office of the Veterans Administration, commanding the production forthwith of five different classes of records of

the college covering a period of about eight years.

There was no testimony offered in the trial court. The agency filed affidavits showing the issuance of and failure to obey the administrative subpoena. The college filed affidavits claiming to show the unreasonableness of the action by the agency.

The court held that the subpoena duces tecum issued by the Veterans Administration and served upon the college demanded the production of records beyond the period for which such records may be required to be produced, thereby exceeding the authority of the Veterans Administration, and that therefore the subpoena was void. The court refused enforcement, and the Manager appeals.

It is eminently clear the statute [1] gives authority for issuance of subpoena in all matters over which the Veterans Administration has jurisdiction.[2] In view of the responsibilities of that agency in the administration of the educational and vocational training program for veterans,[3] there is no doubt that, as it has been specifically held, the matters here sought were subject to the jurisdiction of the Administration.[4]

But the Manager seems to have misconceived the function of a proceeding to enforce the demand for production. Since the matters inquired into were thus clearly within the agency jurisdiction, both here and in the trial court, the issuance of an order compelling production by the college of each and every item listed in the subpoena is treated as if it were a ministerial act to be performed by the Clerk of the District Court. This is a mistake as to a fundamental.

 The sole ground for the intervention of the federal courts to assist executive or administrative investigations is that the passing of such an order is a judicial act, with all which that phrase implies. The proceeding must have as its basis a "case" or "controversy" under the Federal Constitution. The agency asserts its subpoena rights. The college denies. "Thus has arisen a dispute involving rights or claims asserted by the respective parties to it." Interstate Commerce Commission v. Brimson, 154 U.S. 447, 477, 14 S.Ct. 1125, 1133, 38 L.Ed. 1047. Issues made up by the agency and the college as to whether the agency is entitled to the evidence which it seeks and whether or not the refusal to produce the documents demanded is or is not in violation of the duty of the college are so presented that the judicial power is capable of acting on them. The exercise of the judicial function implies consideration and adjudication. The slanders upon administrative investigations might have found some justification were it not that "the propriety of every question in the course of the inquiry being subject to the supervision of the ordinary courts of justice". Cardozo, J., dissenting in Jones v. Securities and Exchange Commission, 298 U.S. 1, 33, 56 S.Ct. 654, 665, 80 L.Ed. 1015. The key question in enforcement of the demand to produce records is whether it is reasonable or arbitrary. A subpoena duces tecum has been placed on par with a search warrant.[5] The parallel may not be exact, but, unquestionably, similar safeguards should be maintained against abuse of either. The question of reasonableness is one for consideration and adjudication by the courts. The mere fact that a demand has been made by an administrative agency does not establish the demand as reasonable. Necessarily, a

1. 38 U.S.C.A. § 131.

2. Carroll Vocational Institute v. United States, 5 Cir., 211 F.2d 539.

3. Public Law 346, 78th Congress, 58 Stat. 287.

4. General Trades School v. United States, 8 Cir., 212 F.2d 656.

5. " 'In other words, the subpoena is equivalent to a search and seizure and to be constitutional it must be a reasonable exercise of the power.' " Lasson Development of the Fourth Amendment to the United States Constitution 137, cited in Oklahoma Press Publishing Company v. Walling, 327 U.S. 186, 202, 66 S.Ct. 494, 502, 90 L.Ed. 614.

**232**

determination of reasonableness cannot be made by formula.[6]

Here the agency approach was that, if the subpoena were not obeyed, the court must issue the order as of course. First, but little attempt was made by the agency to allege, and no attempt was made to prove, that the demand was reasonable. It must be remembered that a case was in court for trial. If it be assumed that the supposed presumption of administrative regularity prevailed in a judicial proceeding, the allegations of the petition for enforcement must be given effect. There was still a case for the court to try. Second, therefore, if it be assumed that the Veterans' Administration had made a showing which was prima facie valid, the college brought forward a great deal of evidence in the form of affidavit, which tended to prove that the demand was entirely unreasonable. The agency did not at any time present contravailing proof. The failure to rebut apparently arose from the theory that there was no case to try, because the court was compelled by law to issue the desired order in any event.

The college, during the period from 1945 to date, has been subject to inspection and audit by the Department of Education of the State of California. During the period from April, 1951, through August 1951, representatives of the General Accounting Office of the United States conducted an audit of the books and records of the college covering a three year period from February 1, 1948, through February 1, 1951. From the date of its first federal contract in October, 1945, and periodically thereafter, numerous training officers of the agency visited the college to maintain close supervision over veteran training. The college was required once a month for several years to submit to the Veterans Administration five forms setting out in detail all aspects of the teaching and training program affecting enrolled veterans. On April 14, 1952, the agency sent out several auditors to commence a "10% audit" of the books and records of the college back to October 16, 1945. This audit continued until at least November, 1952, although there is an inference in the record that it continued until February, 1953.

On March 27, 1953, the agency, through one of its auditors, sought space at the college for his crew of four auditors to make a complete audit of all the books and records for the entire period from October 16, 1945, to that date. The college was advised then, as before mentioned, that, if it would agree to the ten per cent projection demand, the Veterans Administration would be satisfied with a less complete audit.

The college offered to produce all books and records demanded from February 1, 1950, for a period of about three years.

The petition for enforcement goes far to negate the reasonableness of the demand. It is expressly set up:

"The records thus requested were produced and a partial audit thereof made (to the extent of 10%). By November, 1952, it appeared that certain improper billings by the College resulted in an overpayment to it by the Veterans Administration. Several requests thereafter made by the Veterans Administration that the College consent to projection of the audit in order to establish the total overpayment by computation instead of a 100% audit have been ignored by the College. The audit is currently being continued, but is being limited to the period commencing with January, 1950, by reason of the refusal of said College to comply with the terms of the subpoena issued and served on March 31, 1953."

The suggestion of moral obliquity made in the trial court on account of this prelude to the demand thus baldly urged upon a court need not be accepted. The

6. Cf. Oklahoma Press Publishing Company v. Walling, supra, 327 U.S. at page 209, 66 S.Ct. 494, where a somewhat similar statement is made cryptically in the context regarding the requirement of particularity under a much more drastic law. Out of context, it states the sound rule.

pressure was as compelling as that contained in the ultimatum: "If you don't, you can walk home." The suggestion is not that the agency really needs the facts which might be obtained by a reexamination of the record, but that, if the demand be not met, sufficient expense will be piled up by the re-audit of the books that the one hundred per cent computation might well be the cheaper.

■ The Manager did not meet the case made out on affidavit [7] except in minor particulars. Specifically, it was made an issue of fact as to when the Manager requested that the college maintain and preserve the records described V.A.R. 10672 of September 6, 1951.[8] The trial court expressly found no such request was made before February 20, 1953. As a result, this Court need not decide whether the subpoena was emasculated because of the issuance of a self-denying ordinance by the Veterans Administration and the inclusion in its contract with the college of a clause whereby records over three years back need not be retained by the institution. This viewpoint is compellingly urged in the conclusions adopted by the trial judge. Since the limitation on criminal prosecutions runs in three years, this may have furnished the rationale for the voluntary adoption of the rule. In any event, the regulation and the stipulations in the contract seem to set a reasonable time for inspection. It was shown by the regulation limiting the time of keeping records to three years [9] that the demand was unreasonable. Besides, the showing that the agents of the Veterans Administration had examined and reexamined these very records for a period of years and that the last demand was posed as an alternative for the imposition of a penalty arbitrarily fixed by the agents seems to show the demand was not only unreasonable but highly arbitrary and oppressive. In the event the agency had made a case prima facie,[10] the trial court would

7. There has been an attempt to cure this omission in the trial court and here by statements and allegations which are nowhere supported in the record by proof. Instead of trying the case, there is an attempt to bolster the contentions by statements of counsel.

8. 38 C.F.R. 21.672 was promulgated February 6, 1951. The trial court held its operation entirely prospective from that date. It provides in part: "Educational institutions * * * will also maintain adequate financial records to support the claims for payment for veteran training, including financial reports required to substantiate tuition rates based upon costs data. Financial records, where required as above, will include but not be limited to the following—payroll ledgers, cancelled checks, disbursement vouchers, invoices, general ledgers, journals, ledgers for cash receipts and cash disbursements, inventory records, records of accounts payable and accounts receivable."

9. 38 C.F.R. 21.672 contained the following limitation: "The educational institution shall preserve in good condition all progress and attendance records and books of account pertaining to payment and contracts for veteran training for at least a period of three fiscal years following the actual date of submission of covering vouchers to the VA. The maintenance of such records and books of account after the expiration of three fiscal years from the date of submission of the covering vouchers will not be required by the VA, unless in specific cases the longer retention is requested by representatives of the General Accounting Office or the VA, in which event such records and books of account will be maintained until specific authorization exempts the institution from their further retention."

10. Rule 34 F.R.Civ.Proc. 28 U.S.C.A., provides: "Upon motion of any party showing good cause therefor * * * and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or other tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control; * * *."
This rule shows the agency would not be remediless although enforcement of the subpoena is refused.

have been justified in refusing any support to this conduct. There is no rule requiring a court to act against conscience. The proceeding is equitable in character. Equitable considerations should prevail. There is no power to compel a court to rubberstamp action of an administrative agency simply because the latter demands such action. On the merits, action was properly refused by the court.

Finally, the statute under which enforcement is asked seems to envisage a more strict judicial proceeding.[11] An argument is made to the effect an order, if granted, could only require production of evidence in court and that under the particular language the court would be powerless to compel the delivery of the demanded documents to the agency outside the courtroom. But the time has not come where this Court must define the limit of the authority of the trial court in this narrow respect. Since the attitude of the Manager is characterized thereby, it may be well to point out that prayers of the petition transcend the language of the governing statute completely.[12] There is no warrant in the enactment for grant of relief in any of the forms thus prayed.[13] However, if the demand had been properly made and was reasonable, the court might have granted appropriate relief.

■ Under the record made, the trial court properly denied any relief. This Court does not prejudge the rights of the Veterans Administration on a proper record and trial to the enforcement of an appropriate demand.

Affirmed.

Further, the rule indicates appropriate limitations of such power. Since the safeguards contained in the rule are constitutional in origin, these are applicable to an administrative demand enforcible in a court also.

11. It must be noticed that the text of the enactment under which enforcement is sought is entirely different from statutes relating to enforcement of administrative subpoenas such as those contained in Section 9 of the Fair Labor Standards Act and Sections 9 and 10 of the Federal Trades Commission Act. These powers conferred on the District Courts do not stem from these acts. Instead, these are first found apparently in Section 15 of the amendment to the act establishing " 'a Bureau of War Risk Insurance in the Treasury Department' ". The new sections were part of the Act of October 6, 1917, c. 105, 40 Stat. 398.

Since the purposes were different, the considerations regarding the sections of the Interstate Commerce Act are not strictly applicable here.

12. The prayer was in three parts for (1) impounding the documents and records at the office of the college until inspection, examination and audit had been completed by VA, (2) enjoining the college from destroying or disposing of the records, and (3) directing the college to produce and make available the records for inspection at its office during regular business hours.

13. The statute under which enforcement is asked, 38 U.S.C.A. § 133, omits the very drastic clause found in § 9 of the Federal Trades Commission Act, 38 Stat. 717, to the effect that, in case of refusal to obey a subpoena, the corporation or person may be ordered by the court "to appear before the commission, or to produce documentary evidence if so ordered, * * *." 15 U.S.C.A. § 49.