A. H. ROBINS COMPANY, Inc.,
Appellant,

v.

Kathlynn P. FADELY, d/b/a Physician's
Apothecary and Physician's Apothe-
cary, Appellees.

No. 18828.

United States Court of Appeals
Fifth Circuit.

Feb. 14, 1962.

Jack B. Porterfield, Jr., Birmingham, Ala., Arthur J. J. Bohn, Fort Lauderdale, Fla., Robert J. Habenicht, Richmond, Va., for appellant.

J. S. Mead, Emmett R. Cox, Birmingham, Ala., for appellees, Mead, Norman & Fitzpatrick, Birmingham, Ala., of counsel.

Before RIVES, CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Robins, plaintiff below, appeals from a judgment by the court below dismissing its petition for an order to show cause why appellee, Mrs. Fadely, defendant below, should not be adjudged in contempt of court for the alleged violation of a consent decree for injunction restraining appellee from substituting and passing off the product of another for the product of the plaintiff known as "Donnatal." The consent decree of in-

junction was entered December 2, 1957 and enjoined appellee "from infringing plaintiff's trademark 'Donnatal' and from substituting and passing off the product of another for the product of the plaintiff when selling, offering for sale or filling prescriptions, upon calls for any product of the plaintiff."[1]

Upon appellant's petition for order to show cause, accompanied by affidavits, the court below entered, January 9, 1959, an order requiring appellee to show cause why she should not be punished for contempt of court for violating the consent decree which had been entered December 3, 1957, by substituting the product of another manufacturer in filling prescriptions calling for "Donnatal." Appellee answered, denying that she had violated the order. The parties thereupon promptly availed themselves of the discovery procedures of F.R.Civ.P., which occupy about forty-five pages of the printed record. A number of these procedures were the subjects of contests before the court. Thereupon, the action was submitted to the court below by the testimony of seventeen witnesses and a number of exhibits, and the trial court entered its judgment on May 26, 1960 dismissing the petition and order to show cause which it had theretofore entered, incorporating in its decree its findings of fact and conclusions of law pertinent portions of which are reproduced in the margin.[2]

1. The consent decree recites that "Defendant has emphatically denied and still so denies any wrongdoing as charged in the complaint, * * * contends that she does not claim the right or privilege of dispensing on calls for 'Donnatal' the similar preparation of any manufacturer other than plaintiff, * * * does not conceive that she would be legally or equitably prejudiced by the entry of a consent decree," and upon that consent the decree was entered. An injunctive decree with like provisions had also been entered against one of appellee's competitors in Gadsden, Alabama, Brannon-Thompson Drug Store.

2. " * * * plaintiff introduced proof ore tenus that agents of the plaintiff, commonly called 'shoppers,' presented four prescriptions calling for plaintiff's product, 'Donnatal,' on the following dates: October 23 and 25, 1958, and November 4 and 8, 1958. The Court finds that these shoppers received from pharmacists employed by the defendant bottles containing medicinal preparations having a similar color and taste, which were by the shoppers, without any interference with the contents, sealed and mailed directly to the laboratory of the plaintiff corporation at Richmond, Virginia, where certain chemical tests were performed on these samples, and the testimony of plaintiff's chief chemist was that in his opinion the medicinal preparations vended by the plaintiff were not the genuine product 'Donnatal.' This opinion was based solely upon the respective refractive index, specific gravity, acidity, color, transmission, taste, smell, and glucose content of plaintiff's product and said samples after hydrolysis.

"During the pre-trial motions for discovery purposes, it was revealed that plaintiff placed in its genuine product a chemical substance known as a 'tracer', but, as it had a right to do, refused to reveal the nature of this tracer, which refusal was sustained by the Court upon the stipulation of the plaintiff that on a trial of the issue it would rely entirely upon other proof than the existence of a tracer in the genuine product 'Donnatal' and its absence from the samples produced from the business establishment of the defendant.

"Defendant's proof categorically negatived any substitution or passing off. Each pharmacist having to do with the filling of the mentioned prescriptions denied that any product was vended other than the genuine product of the plaintiff.

" * * * Defendant's proof further established to the reasonable satisfaction of the Court that the defendant regularly purchased, had for sale or did sell, substantial quantities of the plaintiff's genuine product 'Donnatal' as well as that of other competing manufacturers, and that any passing off or substitution if it did exist, which the Court does not find, was inconsequential and may have been through inadvertence, and was without the agency, design or procurement of the defendant.

"The Court feels constrained to this conclusion more particularly by the fact that the plaintiff contends its genuine preparation contained a chemical 'tracer' which was placed therein for the purpose of detecting substitution proof of which would have supported the allegations of the petition, and *that the plaintiff elected not to offer such proof but*

In its argument before us, appellant contends that the court below committed six errors [3] which, singly or cumulatively, require a reversal. A careful consideration of these specifications of error leads us to the conclusion that they are without merit and that the judgment appealed should be affirmed.

■ Appellant's first contention is that the trial court placed upon it an illegal burden, stating in its conclusion of law: "This is a civil contempt action and to warrant punishment therefor the alleged contemptuous acts of the defendant must be established by clear and convincing evidence, and while proof beyond a reasonable doubt is not required, doubt should be resolved in favor of the defendant * * *" The argument is directed solely against the last clause in the foregoing quotation—"doubt should be resolved in favor of the defendant."

Appellant concedes, as it must, that in a civil contempt action, guilt must be established by clear and convincing evidence.[4] Just preceding the language appellant challenges the court below had stated unequivocally that "proof beyond a reasonable doubt is not required * *" Despite that clear statement of the standard the trial court was laying down for itself, appellant construes the ensuing clause as expressing the opinions of the trial court that proof was required *beyond all doubt*. Appellant's position is clearly without merit and no convincing authority is cited in support of it. The entire sentence used by the court below indicates clearly that it meant that it acted on the principle that proof was not required to be made beyond a reasonable doubt, but that doubt as to whether the evidence against appellee measured up to the requirements of clear

to rely entirely upon a delicate chemical analysis which, as against proof offered by the defendant, has failed to reasonably satisfy the Court that defendant has violated its injunctive decree.

"Conclusions of Law.

"This is a civil contempt action and to warrant punishment therefor the *alleged contemptuous acts of the defendant must be established by clear and convincing evidence, and while proof beyond a reasonable doubt is not required, doubt should be resolved in favor of the defendant*. The burden of proof is upon the plaintiff and the Court is not reasonably satisfied from all the proof adduced that the plaintiff has carried the burden of proof devolving upon it, and therefore, the petition for an order to show cause and the rule thereon issued are due to be dismissed. * * *" [Emphasis added.]

3. I. That the trial court required appellant to prove its case beyond "doubt;". II. that the court erred as a matter of law: in finding that pre-trial discovery had revealed that appellant placed a chemical "tracer" in its product for the purpose of detecting substitution and in relying upon this erroneous finding, which appellant claims to have been made "dehors the record;" (appellant in effect withdraws this contention in its "Supplemental and Reply Brief"); III. in determining that appellant was contending that it had a chemical "tracer" in its

product, thus placing an extra legal burden upon appellant; IV. in basing its decree in part upon the conclusion that appellant had failed to prove the issue of substitution by failing to produce at the trial evidence of the existence of a "tracer," on the contention that such a conclusion was in direct conflict with the District Court's pre-trial order of May 26, 1959 expressly forbidding the introduction of any such evidence at the trial after it had elected not to answer interrogatory No. 9; V. in basing its determination of the issues upon the finding that any substitution was inconsequential or may have been the result of inadvertence, or was without the design or procurement of the appellee, or that appellee herself had nothing to do with the filling of the prescriptions; and VI. in overlooking part of the evidence and misinterpreting other parts, so that the court's final judgment was not based upon any substantial evidence.

4. National Labor Relations Board v. Tupelo Garment Co., 5 Cir., 1941, 122 F.2d 603; Oriel v. Russell, 1929, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419; City of Campbell, Mo. et al. v. Arkansas-Missouri Power Co., 8 Cir., 1933, 65 F.2d 425, quoting from California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106; and Washington v. Central of Georgia Ry. Co., D.C.Md.Ga., 1958, 174 F.Supp. 33, affirmed per curiam by Court of Appeals, Fifth Circuit, 1959, 268 F.2d 445.

and convincing should be resolved in favor of appellee. The construction appellant seeks to give to the concluding words of this sentence would throw them entirely out of step with all of the words which had gone before them, and would make this statement of the burden of proof clash with other statements in the court's findings that it was not satisfied from all of appellant's evidence that appellee had violated the injunction.

Specifications of Errors Nos. II, III, and IV, note 3 supra, relate to the "tracer" now conceded by appellant to have been presented in Donnatal, and will be treated together. There is confusion in the arguments about what the parties and the court below did with respect to the tracer evidence and its impact upon the trial, and a somewhat detailed look at this feature of the case is indicated.

The "tracer" made its first appearance in the trial when, on February 9, 1959, appellee propounded written interrogatories to appellant under Rule 33, F.R. Civ.P., 28 U.S.C.A. Interrogatory No. 9 was in these words: "State whether or not 'Donnatal' contains any 'tracer' or other chemical which makes 'Donnatal' readily identifiable; (a) If your answer to this interrogatory is in the affirmative, give the name of the chemical used." February 24, appellant filed its application for reconsideration of its objections, which had manifestly been presented to the court orally, to answering Interrogatory No. 9 *inter alia*. The application for reconsideration set forth five reasons for its objections.[6] March 16, appellant, through David A. Mefford, its Chief Control Chemist, filed its an-

swer to appellee's interrogatories, Answer No. 9 being as follows:

"Plaintiff will not rely on the presence of a tracer to establish the existence of substitution."

March 26, the court below filed its order on appellant's application for reconsideration, supra, which order contained these provisions:

"Upon consideration of such application, the Court declines to reconsider its oral rulings on plaintiff's objections to defendant's interrogatories, announced to counsel on February 13, 1959, and embodied in its written order of March 11, 1959, except that plaintiff is relieved of the duty to respond to defendant's interrogatory No. 9; provided, however, if plaintiff declines to answer interrogatory No. 9, it may not, upon the hearing of this cause, introduce evidence, directly or indirectly, relating to the existence in its product, 'Donnatal,' of any 'tracer' or other chemical which makes such product identifiable.

"It is further Ordered, Adjudged and Decreed by the Court that plaintiff's original answers to defendant's interrogatories be retained by the Clerk of this Court under seal until published by order of this Court."

According to the record, therefore, the court below gave appellant Robins the option of answering or not answering whether "Donnatal" contained a tracer which would make it readily identifiable; it provided in each of its orders that the answers would be kept secret until pub-

6. That to require plaintiff to answer interrogatory 9 would place an excessive burden on it; that the information sought was not necessary or indispensable for preparation of the defense; that the damage to be caused to plaintiff by requiring such answer far out-weighs any damage that could be caused to defendant by not requiring the answer; that such an answer would require the revelation of trade secrets which plaintiff claimed as a property right, the revelation of which would tend to deprive plaintiff of its property without due process of law. The

damage so claimed was not specified. The application concluded with these words:

"In the event the foregoing application is denied by the Court, the plaintiff prays that the Court will require the answers to the interrogatories heretofore filed by the defendant be sealed and the defendant, her agents, servants or employees, or any one acting in concert be charged with the secrecy of said answers and on the trial of this case that all testimony concerning the trade secrets of the plaintiff be taken in camera."

lished by an order of the court; and it provided that, if the appellant elected to refuse to make any disclosure concerning the tracer, the court would not permit any proof concerning it to be made at the trial. And, subject to these conditions, the appellant voluntarily answered that it would not "rely on the presence of a tracer to establish the existence of substitution."

It is not accurate to say, therefore, that the court below forbade the introduction of evidence of the tracer evidence by appellant. What it actually did was to give appellant the free and unfettered option to make a secret revelation of the identity of the tracer, restricting appellant's right to make proof concerning the tracer only if it voluntarily declined to make known the chemical which was used as a traced in response to appellee's interrogatories. It is manifest that appellee could not prepare itself to meet proof concerning the tracer if offered at the trial without having the tracer identified in advance in order that she could prepare her proof. It is further plain that appellant made its own election whether it would disclose the identity of its tracer or forego the right to make proof of it at the trial.

Under these conditions we do not think the trial court committed error in giving weight to the fact that the appellant elected to omit proof that Donnatal did contain a chemical tracer which would make the product "readily identifiable," choosing instead "to rely entirely upon a delicate chemical analysis * * * " [7]

Appellant seeks to support its position that it was error for the court below to give any consideration at all to the election made by it to withhold altogether any evidence concerning the tracer. The authorities it cites [8] deal with highly favored privileged communications such as those between physician and patient, and between attorney and client. We do not think they are persuasive here.

■ The rule applicable here is thus stated in 4 Moore, 2d Ed., page 2468: [9]

"Most of the cases dealing with questions of privilege involve the attorney-client privilege and the privilege against disclosure of government files and documents * *

"There is no true privilege against discovery of trade secrets or other 'confidential' business information, but the courts nevertheless will exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors * * * "

The provisions of Rule 30(b) control: " * * * for good cause shown, the court in which the action is pending may make an order * * * that secret processes, developments, or research need not be disclosed, or that the parties shall * * * file specified documents or information enclosed in sealed envelopes to be opened as directed by the court * *."

■ The District Court leaned over backward to give appellant the full protection of these Federal Rules, and we

---

7. Cf. Interstate Circuit, Inc. et al. v. United States, 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed. 610: "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. * * * Silence then becomes evidence of the most convincing character. * * * " And cf. also Baltic Cotton Co. Inc. v. United States, D.C.S.D. Ala., 1931, 50 F.2d 257, affirmed, 5 Cir., 55 F.2d 568; and International Harvester Co. v. William, 1931, 222 Ala. 589, 133 So. 270.

8. 31 C.J.S. Evidence § 156, p. 864; Pennsylvania R. Co. v. Durkee, 2 Cir., 1906,

147 F. 99; United States v. Cotter, 2 Cir., 1932, 60 F.2d 689; Halsband v. Columbia National Life Ins. Co., 2 Cir., 1933, 67 F.2d 863, certiorari denied 291 U.S. 681, 54 S.Ct. 531, 78 L.Ed. 1068; and Dick Co. v. Marr, D.C.S.D.N.Y., 1950, 95 F.Supp. 83, appeal denied 2 Cir., 197 F.2d 498, certiorari denied 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680.

9. And see 1961 Pocket Part, pages 178–181. The text was dealing with Rule 34 and not Rule 33, F.R.Civ.P. but each Rule refers to Rule 30(b) as providing the procedure for the protection of parties and deponents.

have held [10] that such matters are committed to the sound discretion of the trial court and that its actions ordinarily will not be considered prejudicial. We hold that there was no abuse of discretion here.

■ We think that, under the evidence in this case, the trial court was justified in giving weight to the failure of appellant to produce the tracer evidence under the protection provided in the court's order viewed in the light of what the appellant had requested in its motion dealing with the tracer evidence. We think, moreover, that such consideration as was given to this evidence was unimportant in view of the weak showing made by the appellant in its evidence as a whole in comparison to that of the appellee.

■ This brings us to the last specification of error, the contention that the court's finding was not supported by substantial evidence. We disagree with appellant. The narrow question of fact before the court was whether three prescriptions filled by appellee in October and November, 1958 and calling for appellant's product Donnatal elixir had been filled by agents of appellee with Bar-Don, Belletal or some other substitute chemical. Appellant's case depended chiefly upon the opinion testimony of its Chief Control Chemist, Mefford. He gave the opinion, after subjecting the samples presented to him to examination by various physical and chemical tests, that none of the bottles contained Donnatal. Among the steps taken by appellant in carrying out these tests was to determine the alcohol contents of the liquid, to ascertain its refractive index and specific gravity, to determine the presence *vel non* of glucose, and to subject it to smell, odor and color tests. The method employed by Mr. Mefford was to ascertain from each of the specimens the indices of the tests as revealed by his own examination of them, and then to compare these indices with those found on the quality control sheets of appellant. While the analysis of the questioned specimens was made by the witness, it was revealed that the quality control sheets were made up of tests of Donnatal by other employees of appellant, some of whom did not have college degrees or other proof of their qualifications. Appellant supplements this proof by a painstaking analysis of what it conceives to be contradictions between witnesses introduced by appellee and inconsistencies in their statements.

Appellee countered by attempting to show that the tests made by appellant were intricate and elaborate, besides being "delicate;" that the important element of concentration was not satisfactorily developed; and they did not furnish substantial or convincing proof.

The three pertinent specimens which the witness Mefford received through the mail were contained in separate bottles, all being prescriptions filled by employees of appellee. Appellant had engaged a detective agency in Birmingham to furnish three of its operatives to obtain from doctors in Gadsden, Alabama prescriptions for Donnatal, appellant's patented product. Three of the prescriptions described the patient as named Coleman, while the fourth contained the name of Handley. Appellee's employees refused to fill the fourth prescription so that, in reality, only three of the specimens examined by Mefford were involved.

All of appellee's pharmacists were college graduates holding degrees from reputable institutions, and each of them testified that appellee had never requested or suggested that he substitute some other chemical for Donnatal, and that he had never made such a substitution.

10. Fulenwider et al. v. Wheeler, 5 Cir., 1958, 262 F.2d 97, 99: "Of * * * the denial of defendants' request to require production of plaintiff's income tax returns, it is sufficient to say that the whole matter of discovery is one resting within the sound discretion of the trial court, that there is no showing made on this record, there could not be, that the court below abused its discretion, none that if there was error, it was, or could be, prejudicial."

Each of the employees who filled one of the prescriptions testified positively that he filled it with Donnatal and not with any substitute.

Appellee's evidence concerning one of the three prescriptions is especially convincing. All of appellee's employees had become somewhat suspicious about the prescriptions being issued to the same Mrs. Coleman, and before the prescription under discussion was filled, the employee of another drug store in Gadsden, which was being checked by the detectives at the same time, called and discussed the Coleman prescriptions. Subsequent to that, when the detective produced another prescription two of the employees, after discussion, went forward and looked the detective over with care. They decided to go ahead and fill the prescription and they, with at least one other employee of appellee, watched carefully the pouring of the prescription from the Donnatal bottle. That was one of the prescriptions which appellant's chemist found to contain, not Donnatal but a substitute.

Proof was further introduced that Donnatal along with other products of the same nature, did not remain of an exactly uniform character, but changed with varying conditions such as temperature, age and even the size and shape of the bottle in which it was stored.

After this action was begun the appellee had a full audit of her books made by a competent accountant who checked the quantities of Donnatal and the supposedly substitute chemicals as purchased by the appellee, compared the amount used from the respective bottles with the precriptions filled during certain test periods, and found only inconsequential variance between the two. Appellee further invited appellant to make a complete audit of her books, her purchases of Donnatal and like products of competing drug firms and other factors which would tend to reflect whether substitutions were made in prescriptions which called for Donnatal, but appellant did not avail itself of this offer.

The testimony in the record is quite voluminous, and a reading of it has convinced us that the trial court was amply justified in making its findings and arriving at its conclusions even without the tracer testimony discussed above. The conclusion we have reached makes it unnecessary to consider whether appellee was liable in this contempt proceeding for the actions of her employees, of which she had no knowledge and in which she did not participate.

Being of the opinion that the errors argued by appellant are without merit, and that the findings and the judgment of the court below are right, the judgment is in all respects

Affirmed.