**FEDERAL COMMUNICATIONS COM-MISSION, Appellant-Cross-Appellee,**

v.

**Taft B. SCHREIBER and MCA, Inc., Appellees-Cross-Appellants.**

**No. 17990.**

United States Court of Appeals Ninth Circuit.

Feb. 17, 1964.

Rehearing Denied May 4, 1964.

518

Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Sherman Cohn, Attorney, Department of Justice, Max D. Paglin, General Counsel, John J. O'Malley, Jr., Upton K. Guthery, and Barbara B. O'Malley, Attorneys, Federal Communications Commission, Washington, D. C., and Francis C. Whelan, U. S. Atty., Los Angeles, Cal., for appellant-cross-appellee.

Beilenson, Meyer, Rosenfeld & Susman, Allen E. Susman, and Jeffrey L. Nagin, Beverly Hills, Cal., for appellees-cross-appellants.

Before JERTBERG and BROWNING, Circuit Judges, and FOLEY, Jr., District Judge.

FOLEY, Jr., *District Judge.*

Appellant-Cross-Appellee will be referred to as the Commission and Appellees-Cross-Appellants jointly as Appellees and separately as MCA and Schreiber.

On February 26, 1959, by authority of 47 U.S.C. § 403, the Commission published in the Federal Register (FR 1605) its order that an investigatory proceeding be instituted

"* * * to determine the policies and practices pursued by the networks and others in the acquisition, ownership, production, distribution, selection, sale and licensing of programs for television exhibition, and the reasons and necessity in the public interest for said policies and practices * * *." [1]

In the order, the hearing examiner designated to conduct the investigatory proceedings was authorized to receive evidence and make a record thereof, to administer oaths, subpoena witnesses, to compel their attendance, and compel the production of documentary evidence.

The order closed with this paragraph:

"IT IS FURTHER ORDERED, That the said investigatory proceeding shall be a public proceeding except that the said presiding officer may order non-public sessions of the said investigatory proceeding where and to the extent that the public interest, the proper dispatch of the business of said proceeding, or the ends of justice will be served thereby."

The record reflects that while public sessions were being held in Los Angeles, California, the examiner issued a subpoena duces tecum to Schreiber, MCA's Vice President, commanding him to appear to testify and to produce documentary evidence described in the margin as Annex A and B.[2]

At the time and place appointed, Schreiber appeared with counsel and

1. On November 10, 1959, the Commission entered a supplemental order as follows: "NOW THEREFORE, IT IS ORDERED that the inquiry and investigatory proceeding instituted, pursuant to the Commission's Order of February 26, 1959, * * * be and is hereby amended and enlarged to determine the policies, practices, mechanics and surveillance pursued and carried out by networks, station licensees and others in connection with the acquisition, ownership, production, distribution, selection, sale and licensing of programs for radio and television exhibition and the policies and practices pursued by networks, station licensees and others in connection with the selection, presentation and supervision of advertising material for broadcast to the public and the reasons and necessity in the public interest for said policies and practices * * *." 24 F.R. 9275.

2. ANNEX
(A) A list by name or title of all television programs whether series programs, special programs, or otherwise, which appeared or were exhibited by or through the facilities of the television networks op-

produced the list in Annex A, but refused to submit the material subpoenaed in Annex B, although then and there in his possession, unless the Commission would accept said material on a confidential basis, contending that if the material was revealed at a public hearing, trade secrets would be disclosed. Schreiber further refused to testify while the hearing was public and unless his counsel be given the right to object and to state grounds of objection on the record. The

examiner refused to close the hearing and to accept the subpoenaed material as confidential and directed that Schreiber's counsel not participate in the proceedings other than by being present and advising Schreiber.

Appellees petitioned the full Commission for review. The examiner was affirmed on all points and Schreiber was ordered by the Commission to produce Annex B and to testify publicly regarding the same.[3]

erated by NBC, CBS, or ABC since September 1, 1958, which programs were produced by MCA, Inc. or Revue Productions, Inc. and/or in which MCA, Inc. or Revue Productions, Inc. has or had a financial or proprietary interest or with regard to which MCA, Inc. or Revue Productions, Inc. is or was entitled to receive or has received a percentage of the profits or other compensation or fees in connection with the production or exhibition of such programs other than remuneration or compensation for the representation as agent of individual natural persons as talent.

(B) A list of all television programs whether series programs, special programs, or otherwise, which appeared on or were exhibited by or through the facilities of the television networks of NBC, CBS, or ABC, since September 1, 1958, in which MCA, Inc. or any predecessor affiliate or subsidiary of MCA, Inc. acted as packager [a] and/or, by agreement or otherwise, is entitled to receive or has received a percentage of the cost or selling price of said program or was or is entitled to receive or has received other compensation, remuneration or fees in connection with the packaging, licensing for broadcast or selling of said program, otherwise than as remuneration or compensation for the representation as agent of individual natural persons as talent.

(a) "The term 'packaging' is generally applied to the process of developing and assembling the talent and scripts for a particular program or programs. A producer has general charge of the physical processes by which the package is readied for television production." (This case below, F. C. C. v. Schreiber, D.C., 201 F.Supp. 421, 424.)

3. In its Order of January 27, 1961, affirming the Examiner, the Commission stated in part:
"It was the intention of the Commission in issuing both of the above Orders to institute a broad and comprehensive inquiry

to establish a public record of the relevant policies, practices, facts and circumstances involved in the production, creation, selection, sale, licensing and exhibition of programs broadcast through the facilities of its licensees. Although the Commission empowered the Presiding Officer to accept evidence, information and data on a non-public basis, it was the Commission's express intent that the proceedings be public and that the record be available to the public, station licensees, the broadcast industry, to the Commission and to Congress. We think it clear that all of such groups have a proper interest in the complex and generally unknown processes involved in the production, sale, distribution, et cetera, of broadcast programming and, more particularly, in the factual basis for any action—legislative, rule-making or licensing—which the Commission may take as a result of its inquiry into these matters. Moreover, the policies and practices into which inquiry is and has been made herein, involve many-sided transactions between diverse and partially competitive (but also partially complementary) components and members of the same industry, such as networks, advertising agencies, program producers, program packagers, talent agencies, etc. If we are to obtain a full and rounded picture of such transactions, it is highly desirable that the facts, information, data and opinion supplied by one group or individual be known to other groups and individuals involved, so that they may verify, refute, explain, amplify or supplement the record from their own diverse points of view. In our view, a public investigatory hearing is the most effective means to this end. For these reasons, among others, we determined that public proceedings should be the rule herein, and that non-public procedures should be used only in those extraordinary instances where disclosure would irreparably damage private, competitive interests and where such interests could be found by the Presiding Officer to outweigh the para-

When Schreiber maintained the same position, the Commission sought enforcement in the court below pursuant to 47 U.S.C. §§ 401(a), 401(b), 409(f), and 409(g).

The learned trial Judge filed an opinion January 22, 1962, F. C. C. v. Schreiber, D.C., 201 F.Supp. 421, and on March

2, 1962, filed his Findings of Fact, Conclusions of Law and Order.

The Conclusions of Law and Order are printed in the margin.[4]

## APPEAL BY COMMISSION

We will first deal with the appeal by the Commission and will state the ques-

mount interest of the public and the Commission in full public disclosure. It was not the Commission's intention that the non-public procedure be used, solely for their own convenience, by private persons who might be called as witnesses. Nor was it the Commission's intention to accept any information on a basis which would prevent its disclosure if the public interest so requires."

4. CONCLUSIONS OF LAW

I.

This Court has jurisdiction of the Cause. Communications Act of 1934, as amended, Sections 401(a), 401(b), 409(g) ; 47 U.S.C. §§ 401(a), 401(b), 409(g).

II.

The Commission is authorized to conduct the instant investigation.

Communications Act of 1934, as amended, § 403, 47 U.S.C. § 403; Federal Communications Commission v. Cohn, 154 F.Supp. 899, 906 (S.D.N.Y.1957).

III.

The Commission has authority to issue the subpoena and orders sought to be enforced in this proceeding.

Communications Act of 1934, as amended, §§ 409(e), (f), 47 U.S.C. §§ 409 (e), (f) ; Stahlman v. Federal Communications Commission, 126 F.2d 124, 128 (D.C.Cir. 1941) ; Federal Communications Commission v. Cohn, 154 F.Supp. 899, 906 (S.D.N.Y. 1957) ;

See :

Hunt Foods & Industries, Inc. v. Federal Trade Commission, 286 F.2d 803, 808–809 (9th Cir., 1960) aff'g the opinion in Federal Trade Commission v. Hunt Foods & Industries, Inc., 178 F.Supp. 448 (S.D.Cal.1959) ; Federal Trade Commission v. National Biscuit Company, 18 F.Supp. 667, 671 (S.D. N.Y.1937).

IV.

Complementing its investigative power, the Commission is authorized by Sections 4(i), 303(f) and 303(g) of the Communications Act, (47 U.S.C. §§ 154(i), 303(f), and 303(g)) to perform any and all acts, make such rules and regulations, issue orders not inconsistent with the Communications Act, as may be necessary in the

execution of its functions and generally to encourage the larger and more effective use of radio in the public interest. Section 303(i) of the Communications Act (47 U.S.C. § 303(i)) authorizes the Commission to make special regulations applicable to radio stations engaged in chain broadcasting as the public interest, convenience, or necessity require.

V.

The Commission is required to report to Congress information and data considered of value in the determination of questions connected with the regulation of broadcasting and to make specific recommendations to Congress as to additional legislation which the Commission deems necessary or desirable (Communications Act, Section 4(k), 47 U.S.C. § 154(k)).

VI.

The Commission was authorized by Sections 5(d) (1) and 5(d) (2) of the Communications Act (47 U.S.C. § 155(d) (1)) to designate its Chief Hearing Examiner, Mr. James D. Cunningham, to preside over the taking of evidence in that phase of the investigatory proceeding pertinent to this cause.

VII.

Under § 6(a) of the Administrative Procedure Act, respondents were not entitled to cross-examine witnesses testifying in these hearings. Respondents were and are, however, entitled to the following :

(a) The right to have counsel accompany respondents when testifying ;

(b) The right to have respondents' counsel object to any questioning by the Commission, its counsel or Hearing Examiner deemed improper by respondents' counsel ;

(c) The right to have counsel for respondents present on the record concise grounds and reasons for any such objection ;

(d) The right to have counsel for respondents, without interference by the Commission, its counsel or Hearing Examiner, initiate advice to his client with respect to the propriety or legality of any question asked of his client and to advise his client not to answer any such questions deemed improper.

VIII.

The information requested in "Annex B" of the Commission's subpoena is rea-

tions and errors specified in the language of the Commission set forth in its opening brief.

1. Whether the District Court erred in finding and concluding that any fur-

sonably relevant to the inquiry being conducted by the Commission.

> Mines & Metals Corp. v. Securities and Exchange Commission, 200 F.2d 317, 321 (9th Cir. 1952) ; Detweiler Bros. v. Walling, 157 F.2d 841 (9th Cir. 1946) ; United States v. Woerth, 130 F.Supp. 930, 937–939 (N.D.Iowa 1956).

### IX.

The Federal Communications Commission possesses a broad power of investigation and subpoena, and the fact that the respondents were not licensees of the Commission did not prevent it from seeking the required information from them.

> Federal Communications Commission v. Cohn, 154 F.Supp. 899, 906 (S.D.N.Y. 1957) ; Stahlman v. Federal Communications Commission, 126 F.2d 124, 128 (D.C.Cir. 1941).

### X.

The alleged failure of the Commission to promulgate adequate ground rules to cover the proceeding did not prejudice respondents.

> Administrative Procedure Act, Section 10(e) [5 U.S.C. § 1009(e)].

### XI.

The subpoena and order duly served upon respondents in this proceeding are in all respects valid, and respondents are in disobedience of the same.

### XII.

This Court has the power to retain jurisdiction for any subsequent proceedings consequent upon the Order issued.

> Hunt Food & Industries, Inc. v. Federal Trade Commission, 286 F.2d 803, 813 (9th Cir. 1960).

In accordance with the Findings of Fact and Conclusions of Law :

1. IT IS HEREBY ORDERED that respondents, MCA, Inc. and Taft B. Schreiber, are hereby ordered to appear before a Presiding Officer duly appointed by the Federal Communications Commission at a time and place to be fixed by the Commission, to testify and to produce books, papers and documents in accordance with the subpoena issued and served upon the respondents on October 17, 1960, and orders issued by the Commission and duly served upon the respondents.

2. IT IS FURTHER ORDERED that any further interrogation of respondents and any documents produced by respondents be taken and held by the Commission in private and confidential session, that the public be excluded therefrom, that all testimony adduced and documents produced be maintained in confidence by the Commission, that the Commission by motion duly made and served, may move the Court upon the conclusion of such interrogation and production for an order, should good cause exist therefor, permitting such testimony and documents to be made public, and that respondents shall retain the right to oppose such motion if and when so made.

3. IT IS FURTHER ORDERED that in the course of any further interrogation of respondents :

   a) Counsel for respondents shall not be entitled to cross-examine witnesses ;

   b) Respondents shall have the right to have counsel accompany respondents when testifying, the right to have respondents' counsel object to any questioning by the Commission, its counsel or the Hearing Examiner deemed improper by respondents' counsel, the right to have counsel for respondents present on the record concise grounds and reasons for any such objection, and the right to have counsel for respondents, without interference by the Commission, its counsel or the Hearing Examiner, initiate advice to his client with respect to the propriety or legality of any question asked of his client and to advise his client not to answer any such question deemed improper.

   c) If respondents decline to answer any questions upon advice of counsel or otherwise, the propriety of all such questions shall be ruled upon by this Court upon appropriate motion by any of the parties hereto, and respondents shall not be deemed to be in contempt either of this Court or of the Commission or suffer or incur any penalty until and unless the Court has ruled in favor of the propriety of any such questions and respondents thereafter refuse or decline to answer the same.

4. IT IS HEREBY ORDERED that the Order of this Court shall be, and it is hereby, stayed during and throughout the period within which an appeal may be taken from such Order, and, if an appeal be taken therefrom, such stay shall remain in effect during and throughout the period of the pendency of the appeal.

5. The Court retains jurisdiction of this cause for any subsequent proceedings consequent upon this order.

ther interrogation of appellees and any documents produced by them shall be taken in a private, non-public proceeding and held by the Commission on a confidential basis; that the Commission must move the District Court for an order allowing the documents and testimony to be made public; and that appellees shall have the right to oppose such a motion.

2. Whether the District Court erred in concluding that under Section 6(a) of the Administrative Procedure Act, 5 U.S.C. § 1005(a), appellees have the following rights:

(a) The right to have their counsel object to any questioning by the Commission, its counsel, or the presiding officer deemed improper by appellees' counsel.

(b) The right to have appellees' counsel present, on the record, concise grounds and reasons for any such objection.

### Specification of Errors

1. The District Court erred in its Finding of Fact XI.

2. The District Court erred in its Conclusion of Law VII(b) and VII(c).

We will consider these questions and specifications of error in the order set forth above.

### First Question and Specification of Error

In his decision (pp. 425–426 of 201 F. Supp.), the Trial Judge stated:

"However, I am of the opinion that in view of the well-grounded fears of the respondents that the testimony to be given might result in disclosure of trade-secrets, of which competitors might take advantage, it is ordered that the Examiner confine attendance at the hearing to the persons directly involved in the proceedings, their counsel, experts and witnesses and exclude the general public."

"The respondents, MCA, Inc. and Taft B. Schreiber, are hereby ordered to appear before a Hearing Examiner duly appointed by the Commission at a time and place to be fixed by the Commission, to testify and to produce books, papers and documents in accordance with the above mentioned subpoena and orders issued by the Commission and duly served upon the respondents. Jurisdiction will be retained by the Court for any subsequent proceedings consequent upon the order. (Hunt Food & Industries, Inc. v. Federal Trade Commission, 9 Cir., 1960, 286 F.2d 803, 813)."

The Trial Court's Finding of Fact No. XI reads:

"The record herein, including but not limited to, the testimony in the extensive hearings held by the Commission in its network programming inquiry, make it necessary that in protection of respondents' rights and to preclude disclosure of trade secrets of which competitors might take advantage, all further interrogation of, and all further testimony given by, respondents shall be given in non-public sessions, and shall be retained and maintained in confidence by the Commission."

The Commission does not question that the Trial Court had the authority to impose safeguards to prevent the possible disclosure of trade secrets, while ordering that appellees appear, testify and disclose the material sought by the Commission, but contends that the District Court abused its discretion and therefore erred.

In Chapman v. Maren Elwood College, 9th Cir., 1955, 225 F.2d 230, at Page 231, we stated:

"The key question in enforcement of the demand to produce records is whether it is reasonable or arbitrary. * * * The question of reasonableness is one for consideration and adjudication by the courts. The mere fact that a demand has been made by an administrative agency does not establish the demand as reasonable."

In Goldberg v. Truck Drivers Local Union No. 299, 6th Cir., 1961, 293 F.2d 807, at Page 814, the Court states:

"In our opinion, it was not unreasonable to compel production of records which the law required to be kept and from which the reports filed with the Secretary were made. * * * The District Court, however, had the power to impose protective restraints on the conduct of the investigation to relieve against oppression or other illegal conduct. Hunt Foods & Industries, Inc. v. Federal Trade Commission, 9 Cir., 286 F.2d 803, 811, certiorari denied 365 U.S. 877, 81 S.Ct. 1027, 6 L.Ed. 2d 190."

In F. C. C. v. Cohn, S.D.N.Y.1957, 154 F.Supp. 899, at Page 908, the Court held:

"Of course the subpoena power must at all times be confined to 'the rudimentary principles of justice,' and the courts will plainly refuse to enforce an administrative subpoena which is not within the bounds of reasonableness. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Chapman v. Maren Elwood College, 9 Cir., 225 F.2d 230; N. L. R. B. v. Anchor Rome Mills, 5 Cir., 197 F.2d 447, 449–450. There is a delicate balance between the necessity of obtaining information required in the public interest in furtherance of a lawful inquiry, and the onerous burdens which the furnishing of this information may place on these respondents. But in the case at bar the scales are tipped on the side of the public interest so as to outweigh the burden and inconvenience to the respondents."

and at Page 911 of 154 F.Supp.,

"Subpoenas of an administrative agency, though validly issued, need not be enforced precisely according to their terms or without modification. Whenever it is made to appear that a subpoena is so broadly drawn as to be oppressive and unreasonable it is the duty of the court to prevent abuse of its process and to place such limitations upon the subpoena as is just and right under all the circumstances. N. L. R. B. v. Anchor Rome Mills, 5 Cir., supra, 197 F.2d, at page 449; see Kilgore National Bank v. Federal Petroleum Board, 5 Cir., 209 F.2d 557, 560; cf. Chapman v. Maren Elwood College, 9 Cir., 225 F.2d 230, supra; Walling v. American Rolbal Corp., 2 Cir., 135 F.2d [1003] at page 1005, supra. These matters are in the court's discretion."

In Delno v. Market St. Ry. Co., 9th Cir., 1942, 124 F.2d 965, at Page 967, this Court said:

"Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

In a recent case, Weller v. Dickson, 9th Cir., 1963, 314 F.2d 598, beginning on Page 600, we said, in part:

"* * * we must consider for a moment what is meant by the exercise and abuse of discretion. The judicial efforts to give these expressions some legal stability are legion. It was held in Hartford-Empire Co. v. Obear-Nester Co., 95 F.2d 414, 417 (8th Cir. 1938) that where an appellate court has power to review the exercise of a judicial discretion governed by situation and circumstances affecting exercise of discretion, inquiry is confined to the question whether the situation and circumstances clearly show an 'abuse of discretion', that is, arbitrary action not justified in view of the situation and circumstances.

"The Court in N. L. R. B. v. Gurnsey-Muskingum Elect. Co-op. [Inc.],

285 F.2d 8, 11 (6th Cir. 1960) pointed out that there is no exact measure of what constitutes an abuse of discretion, and it is more than the substitution of judgment of one tribunal for that of another, discretion being governed by situation and circumstances affecting each individual case, and even where an appellate court has power to review exercise of such discretion, inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances.

"Present day decisions have tended to erode the common law meaning of many words and phrases used in legal literature, and as a result the word 'discretion' as it is now generally used in the law, is but an anemic facsimile of a robust ancestor. Unless we are about to attend its demise, and make the word entirely meaningless, we should proceed with some caution."

In Wigmore on Evidence, McNaughton Revision, Volume VIII, Section 2212, under the title "Trade Secrets and Customers' Names", we note the following language:

"Accordingly, there ought to be and there is, in some degree, a recognition of the privilege not to disclose that class of facts which, for lack of a better term, have come to be known as trade secrets.

"Nevertheless, the occasional necessity of recognizing it should not blind us to the danger of such a measure, or entice us into an unqualified sanction for such a demand. * * * In other words, a person claiming that he needs to keep these things secret at all should be expected to make the exigency particularly plain. * * * No privilege at all should there be conceded, although as much privacy as possible might be preserved by compelling disclosure no farther than to the judge himself, * * *."

We hold, therefore, that the Trial Judge did not abuse his discretion, but, on the contrary, established a fair and just procedure whereby a most important investigation could proceed without being unduly disrupted, obstructed or prolonged, and at the same time afford appellees protection against the improvident disclosure of possible valuable trade secrets.

### Second Question and Specification of Error

Did the District Court err in its Conclusion of Law No. VII(b) and (c), which reads,

"Under § 6(a) of the Administrative Procedure Act, respondents were not entitled to cross-examine witnesses testifying in these hearings. Respondents were and are, however, entitled to the following:

"(b) The right to have respondents' counsel object to any questioning by the Commission, its counsel or Hearing Examiner deemed improper by respondents' counsel.

"(c) The right to have counsel for respondents present on the record concise grounds and reasons for any such objections."

The parties agree and we so hold that the proceedings in this case are investigatory and not adjudicative in nature. They also agree that the right of counsel to object and argue objections on the record, if it exists in this case, is not a constitutional right, but a statutory right. We concur; see Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

Does the first sentence of Section 6(a) of the Administrative Procedure Act (5 U.S.C. § 1005(a)) apply to fact-finding investigations by the Commission, or is the sentence applicable only to the Commission's adjudicative functions?

Professor Davis in his work, Administrative Law Treatise, Volume I, Section 8.10, Right to Counsel, writes:

"The Administrative Procedure Act provides in § 6(a): 'Except as otherwise provided in this Act—* *

Any person compelled to appear in person before any agency or representative thereof shall be accorded the right to be accompanied, represented and advised by counsel or, if permitted by the agency, by other qualified representative. Every party shall be accorded the right to appear in person or by or with counsel or other duly qualified representative in any agency proceeding.'

"The first sentence reverses the law declared in Bowles v. Baer, 142 F.2d 787, (7th Cir. 1944), holding that witnesses subpoenaed in an administrative investigation may be denied representation by counsel. If the person is 'compelled to appear in person', he is entitled to counsel."

The first sentence of Section 6(a) has been held to assure the appearance of counsel with taxpayers and with other witnesses compelled to appear for examination before agents of the Internal Revenue Service conducting private investigations. Backer v. Commissioner of Internal Revenue, 5th Cir., 1960, 275 F.2d 141; In Re Neil, D.C.S.D.W.Va., 1962, 209 F.Supp. 76; United States v. Smith et al., D.C.Conn., 1949, 87 F.Supp. 293. The statutory authority for the appearance of counsel in these cases is the Administrative Procedure Act. In the Internal Revenue Code, Congress did not provide for the appearance of counsel in such cases.

The Trial Judge, in his opinion in this case, at Page 423 of 201 F.Supp., pointed out that in Hannah, the Supreme Court considered the meaning of the right to counsel before regulatory agencies conducting fact-finding investigations. While this is true, in our reading of Hannah, the Civil Rights Act and not the Administrative Procedure Act is the source of authority for appearance of counsel.

The Supreme Court did not hold that the first sentence of Section 6(a) applies to investigations by regulatory agencies. As a matter of fact, the Commission argues that in Hannah, the Court, by implication, took the contrary position. Beginning at Page 445 of 363 U.S., at Page 1516 of 80 S.Ct., 4 L.Ed.2d 1307, we find this language:

"Although these agencies normally make determinations of a quasi-judicial nature, they also frequently conduct purely fact-finding investigations. When doing the former, they are governed by the Administrative Procedure Act, 60 Stat. 237, 5 USC §§ 1001–1011, and the parties to the adjudication are accorded the traditional safeguards of a trial. However, when these agencies are conducting nonadjudicative, fact-finding investigations, rights such as apprisal, confrontation, and cross-examination generally do not obtain."

What the Supreme Court actually decided in Hannah was that the Due Process Clause of the Fifth Amendment did not require that, in fact-finding, nonadjudicative investigations, "the full panoply of judicial procedures be used * * * due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings * * *" (p. 442 of 363 U.S., p. 1514 of 80 S.Ct., 4 L.Ed.2d 1307). Thus, in stating that when an agency acts quasi-judicially, it is governed by the Administrative Procedure Act and the parties are accorded the "traditional safeguards of a trial", the Court is indicating that the Administrative Procedure Act assures due process under the Fifth Amendment where there is a trial-type, adjudicative proceeding.

Unlike the Civil Rights Act considered in Hannah, the Federal Communications Act does not provide for the appearance of counsel when the Commission conducts a fact-finding, nonadjudicative investigation. Therefore, unless the first sentence of Section 6(a) applies, counsel's right to appear and participate in the instant hearing exists only by virtue of the Commission's duly promulgated Rules and Regulations.

Since the Supreme Court has not decided the question of the applicability of the first sentence of Section 6(a) of the Administrative Procedure Act to non-adjudicative, fact-finding investigations, neither should we, unless it is necessary. We need not and do not do so, because, assuming that the first sentence of Section 6(a) applies to the instant investigation, we hold that its requirements have been met.[5]

Appellees contend that the word "represented" in the phrase "the right to be accompanied, represented, and advised by counsel" in the first sentence of Section 6(a) entitled counsel to object and to state grounds in support of objections on the record and the Trial Judge apparently agreed.

■■ This is a question of first impression. We hold that the word "represented" must be read in light of the Due Process Clause of the Fifth Amendment and therefore varies in meaning depending upon the nature of the function being exercised. While counsel may, as a matter of right, object and argue objections on the record, just as he may, as a matter of right, cross-examine and call witnesses in a trial-type, adjudicatory proceeding, these rights do not exist in the fact-finding, nonadjudicative investigation unless specifically provided by statute or duly promulgated rules. The right to object and argue objections on the record is not to be implied, here, from the use of the word "represented" in Section 6(a).

The Commission's proposed Conclusion of Law No. VII reads as follows:

"VII

"The respondents were accorded the representation by counsel to which they were entitled by law in an investigatory proceeding such as that before the Commission.

"Hannah v. Larche, 363 US 420, 446 [80 S.Ct. 1502, 4 L.Ed.2d 1307] (1960)

"Administrative Procedure Act, § 6(a) (5 USC § 1005(a))".

■ The Trial Court rejected the Commission's proposed Paragraph VII in favor of Paragraph VII proposed by appellees. For the reasons given, the Trial Court erred in so doing. Under the Federal Communications Act, the Commission has the authority to limit counsel in this regard. Inherent in the Commission's power of investigation (47 U.S.C. § 403) is the authority "to prevent the sterilization of investigations by burdening them with trial-like procedure." (Hannah v. Larche, Page 448 of 363 U.S., Page 1518 of 80 S.Ct., 4 L.Ed.2d 1307).

The reasoning in Hannah supports our position. There, the Court quotes with approval a rule of the Federal Trade Commission that while "persons summoned to appear before investigative proceedings * * * may have the advice of counsel, 'counsel may not, as a matter of right, otherwise participate in the investigation.'" (p. 446 of 363 U.S., p. 1517 of 80 S.Ct., 4 L.Ed.2d 1307.).

### Cross Appeal by Appellees

■ Appellees contend that the District Court erred by failing to conclude that the Commission is without power to compel appellees to produce documents requested and to give testimony until the Commission complies with the requirements of Section 3 of the Administrative Procedure Act by promulgating and publishing proper rules governing

5. From the record, it is clear that Schreiber was permitted by the Commission to be accompanied and advised by counsel. While the record does show that the Examiner did on one occasion deny counsel the right to initiate advice to the subpoenaed witness, the Commission has not appealed from subparagraph (d) of paragraph VII of the Trial Court's Conclusion of Law (Note 4 supra) that under

Section 6(a), appellees were entitled to:
"(d) The right to have counsel for respondents, without interference by the Commission, its counsel or Hearing Examiner, initiate advice to his client with respect to the propriety or legality of any question asked of his client and to advise his client not to answer any such questions deemed improper."

the procedures for investigative proceedings.

The language of Section 3(a) of the Administrative Procedure Act relied upon by appellees is found in 5 U.S.C. § 1002, and in its pertinent parts, reads,

"(a) Every agency shall separately state and currently publish in the Federal Register * * * substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law. No person shall in any manner be required to resort to organization or procedure not so published."

Appellees contend, generally, that the Commission is required to promulgate and publish rules and regulations governing investigations similar to the Commission's rules of practice applicable to its adjudicative proceedings (47 C.F.R. §§ 1.11–1.56) and specifically that there must be promulgated and published procedures governing the role of counsel, witnesses and review by the Commission of determinations made by the Examiner.

The Commission cites Section 1.10 of its Rules and Regulations (47 C.F.R. § 1.10), as follows:

"*Proceedings before the Commission.* The Commission may on its own motion or petition of any interested party hold such proceedings as it may deem necessary from time to time in connection with the investigation of any matter which it has power to investigate under the law, or for the purpose of obtaining information necessary or helpful in the determination of its policies, the carrying out of its duties or the formulation or amendment of its rules and regulations. For such purposes it may subpena witnesses and require the production of evidence. Procedures to be followed by the Commission shall, unless specifically prescribed in this part, be such as in the opinion of the Commission will best serve the purpose of such proceeding."

The Commission calls to our attention that it has published in the Federal Register some thirteen orders governing this proceeding.[6]

We find that the record supports the Commission's position that appellees have had full and complete notice of all proceedings taken which concern them and that appellees have not been prejudiced in any manner by the Commission's failure to promulgate and publish rules and regulations if required. Appellees apparently concede that this is so, but argue that they may be prejudiced in the future since the Commission's investigation has not been completed.

The Trial Judge found these objections without merit. At Page 425 of 201 F.Supp., he said:

"The complaint that the Commission has not promulgated 'ground rules' as required by the Administrative Procedure Act (5 U.S.C.A. §§ 1002, 1003) is not well taken. It is doubtful if the provisions of that Act apply to any but adjudicating agencies. (Hannah v. Larche, supra, 363 U.S. pp. 452–453, 80 S.Ct. 1502, 4 L.Ed.2d 1307). Furthermore, there is evidence in the record showing that rules have been promulgated which are suited to the needs of the Commission. At any rate, unless and until an adjudicative stage is reached, the failure to make rules becomes an abstract question which need not be decided now. Failure to do so does not prejudice the respondents."

6. References to the Federal Register are footnoted, Note 4, Page 425, of 201 F. Supp., as follows:
"4. See, § 1.10 of the Commission's Rules and Regulations, 47 C.F.R., § 1.10 and thirteen special orders issued in the present proceeding, and published. See, 24 F.R. 1605, 2918, 3060, 5122, 5726, 9275, 9377; 25 F.R. 2116, 6998, 7552; 26 F.R. 992, 1194, 4462."

**We also note** Paragraph X of the Conclusions of Law reads:

"X

"The alleged failure of the Commission to promulgate adequate ground rules to cover the proceeding did not prejudice respondents.

"Administrative Procedure Act, Section 10(e), [5 U.S.C. § 1009(e)]."

It is not necessary for us to decide whether Section 3(a) applies to nonadjudicative, fact-finding investigations, and it is unnecessary to define the term "substantive rule" as used in Section 3(a) or to determine if the rules appellees seek constitute rules of substance or procedure,[7] since failure to promulgate and publish rules has not prejudiced appellees.

While Section 10(e) of the Administrative Procedure Act directs the reviewing court to set aside agency action found to be taken without observance of procedure required by law, it also directs that the Court take due account of the rule of prejudicial error. See Madokoro v. Del Guercio, 9th Cir., 1947, 160 F.2d 164, 167, cert. denied 332 U.S. 764, 68 S.Ct. 68, 92 L.Ed. 349; Alesi v. Cornell, 9th Cir., 1957, 250 F.2d 877, 879; Florida Citrus Commission v. United States, D.C.N.D.Fla., 1956, 144 F.Supp. 517, 521, aff'd. 352 U.S. 1021, 77 S.Ct. 589, 1 L.Ed.2d 595.

We refuse to speculate about the future. In the event other conflicts arise during the investigation, judicial review is available. We find the cross appeal without merit.

We affirm the Trial Court, except that Subparagraphs (b) and (c) of Paragraph VII of the Conclusions of Law are stricken and the order below is modified to conform to this opinion.

BROWNING, Circuit Judge (dissenting in part).

I

Under federal regulation primary responsibility for program content is imposed upon individual television broadcast licensees.[1] The purpose of the present investigation is to determine whether control of program content has in fact passed into the hands of others, and, if so, what administrative action should be taken, or legislative action recommended, in response to the shift in power.[2] The authority of the Commission to conduct such an inquiry is not questioned.[3] The public interest in its thoroughness and effectiveness is obviously great.

---

7. Ranger v. F. C. C., 1961, 111 U.S.App. D.C. 44, 294 F.2d 240, 244, reads, in part: "But the Administrative Procedure Act excepts from formal rule making requirements amendments which effect only procedural changes. The Commission insists that the amendment here involved was a procedural change, and we agree. Of course all procedural requirements may and do occasionally affect substantive rights, but this possibility does not make a procedural regulation a substantive one." See Hotch v. United States, 9th Cir., 1954, 212 F.2d 280, 14 Alaska 594, where this Court struck down a criminal conviction for failure to properly promulgate and publish a substantive rule required by Section 3(a) of the Administrative Procedure Act.

1. As the Commission stated in its order of Nov. 10, 1959, 24 Fed.Reg. 9275: " * * * under the Communications Act and the policies promulgated by the Commission thereunder, the selection, supervision and broadcast to the public of programs and other material including advertising is the primary responsibility of the licensed broadcaster subject to the duty of such broadcaster so to exercise that responsibility as to serve the public interest in terms of the needs and interests of the community which such broadcaster is licensed to serve. * * * "

2. The purpose and scope of the inquiry are detailed in the Commission's orders of Feb. 26, 1959, 24 Fed.Reg. 1605, and Nov. 10, 1959, 24 Fed.Reg. 9275.

3. Congress granted the Commission "full authority and power at any time to institute an inquiry * * * as to any matter * * * concerning which any question may arise under any of the provisions" of the Communications Act of 1934. 47 U.S.C.A. § 403.

Mr. Schreiber is Vice President of MCA, Inc. The Commission has found, without challenge, that MCA "engages on a large scale, in all facets of television program production," and that "failure fully to explore the policies, practices and activities of MCA, Inc. * * * would seriously impair, if not render nugatory," the Commission's inquiry.

Schreiber and MCA do not question the validity of the Commission's subpoenas and orders requiring the testimony of Schreiber and the production of the records of MCA described in Annex B.[4] They contend only that the Commission erred in declining to receive the testimony and documents in confidence.

The order initiating the inquiry directed that the proceedings be public, except where the public interest, the proper dispatch of business, and the ends of justice would be served by non-public sessions. The exception, as the Commission later made clear, was intended to permit the presiding officer to order non-disclosure of particular evidence "where disclosure would irreparably damage private, competitive interests and where such interests could be found * * * to outweigh the paramount interest of the public and the Commission in full public disclosure." [5]

The adoption of this rule of procedure was well within the Commission's power. Section 4(j) of the Communications Act of 1934 (47 U.S.C.A. § 154(j)) provides that the Commission "may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice." Congress by this grant of authority to the Commission "left largely to its judgment the determination of the manner of conducting its business * * *." FCC v. WJR, The Goodwill Station, Inc., 337 U.S. 265, 282, 69 S.Ct. 1097, 1106, 93 L.Ed. 1353 (1949).[6]

Grants of authority comparable in scope have been held sufficient to authorize an agency to require public production of information,[7] or to receive data in confidence,[8] in investigative inquiries,

4. The District Court held that, "the Commission has authority to issue the subpoena and orders sought to be enforced in this proceeding"; that "the information requested in 'Annex B' of the Commission's subpoena is reasonably relevant to the inquiry being conducted by the Commission"; and that "the subpoena and order duly served upon respondents in this proceeding are in all respects valid, and respondents are in disobedience of the same." Schreiber and MCA have not challenged these findings and conclusions on their cross-appeal.

5. See note 3 of this court's opinion.

6. The Commission's own statement of its authority in this regard is similarly broad. Section 1.10 of the Commission's General Rules of Practice and Procedure provides that procedures to be followed in investigative proceedings shall "be such as in the opinion of the Commission will best serve the purposes of such proceeding." 47 C. F.R. § 1.10 (1958).

7. See, e. g., Isbrandtsen-Moller Co. v. United States, 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562 (1937); E. Griffiths Hughes Inc. v. FTC, 61 App.D.C. 386, 63 F.2d 362 (D.C.Cir. 1933).

It is "the fundamental policy of free societies that justice is usually promoted by disclosure rather than secrecy." Boeing Airplane Co. v. Coggeshall, 108 U.S. App.D.C. 106, 280 F.2d 654, 662 (1960). "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." Brandeis, Other People's Money (1914), quoted in In re Util. Employees Sec. Co., 3 S.E.C. 1087, 1094 (1938). See also In re H. P. Hood & Sons, Inc., No. 7709, FTC, March 14, 1961, 11 Pike & Fischer, Admin.Law (2d) 116 (1962); Trade Reg. Rep. ¶ 29461 (FTC 1961), Comment, 60 Mich.L.Rev. 647 (1961–1962).

Of course public exposure may also be an instrument of abuse. See generally Rourke, Law Enforcement through Publicity, 24 U.Chi.L.Rev. 225 (1956–1957); Newman, Due Process, Investigations and Civil Rights, 8 U.C.L.A.L.Rev. 735, 755–58 (1961); Gellhorn & Byse, Administrative Law 666–75 (4th ed. 1960); Note, 72 Yale L.J. 1227 (1963).

8. See Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796, 321–22 (1933); Bowles v. Baer, 142 F.2d 787, 789 (7th Cir. 1944); Woolley v. United States, 97 F.2d 258, 262 (9th Cir. 1938). "Agencies themselves, of course, may make investigative proceedings private, excluding the public."

as the agency may determine to be proper on a balancing of public interest and private rights in the particular instance. The choice cannot be arbitrary or an abuse of the agency's discretion, and judicial relief is available if it is.[9] But the decision in the first instance belongs to the administrative authority, and its decision is not to be disturbed unless these limits are transgressed.[10]

The reasons for the Commission's decision to require public disclosure in the present inquiry appear fully in the rec-

Davis, Administrative Law 229 (1958). Section 6(b) of the Administrative Procedure Act (APA) contemplates "a nonpublic investigatory proceeding." 5 U.S.C.A. § 1005(b). See Newman, Federal Agency Investigations: Procedural Rights of the Subpoenaed Witness, 69 Mich.L. Rev. 169, 172 (1961–1962).

9. See, e. g., Bank of America Nat'l Trust & Sav. Ass'n v. Douglas, 70 App.D.C. 221, 105 F.2d 100, 102, 123 A.L.R. 1266 (D.C. Cir. 1939); FCC v. Cohn, 154 F.Supp. 899, 912–913 (S.D.N.Y.1957); FTC v. Bowman, 149 F.Supp. 624, 630 (N.D.Ill. 1957), aff'd 248 F.2d 456 (7th Cir. 1957); 1 Davis, Administrative Law 229 (1958). See also Menzies v. FTC, 242 F.2d 81, 84 (4th Cir. 1957).

10. The following comments regarding agency discretion to choose between public and private disclosure were made in the light of statutory provisions which granted the agencies concerned no greater power over the conduct of hearings than is vested in the Commission by 47 U.S.C.A. § 154(j):

American Sumatra Tobacco Corp. v. SEC, 68 App.D.C. 77, 93 F.2d 236, 239 (1937), 71 App.D.C. 259, 110 F.2d 117, 120–121 (1940):

"For unquestionably Congress * * * imposed on the Commission the duty of considering the claimed danger of loss and damage and of weighing it in the scale of public interest. And this, at least, is what the Commission has attempted to do and, if the conclusion reached is just as likely to be correct as incorrect, it is our duty to let it stand.

"* * * [T]he question is primarily not for us but for the Commission, and Congress unquestionably intended that the Commission should bring to bear upon the decision of this and like questions, what has been called in cases within the jurisdiction of the Interstate Commerce Commission, the knowledge and experience of experts. This does not by any means set up an inquisition destructive of the rights of the individual. The delegated power is not to be exercised arbitrarily or to be considered an unfettered discretion over the property of the citizen. Its exercise is subject to review. But so long as the Commission's decision rests on substantial evidence and on inferences which are not arbitrary and capricious, it should be sustained. * * *"

E. Griffiths Hughes Inc. v. FTC, 61 App.D.C. 386, 63 F.2d 362, 363 (1933): "Doubtless Congress considered that there might be occasions when it would be unjust to a person or corporation proceeded against to require public hearings and left the decision in such cases to the board." And at 364 of 63 F.2d: "Doubtless on such a hearing as is here provided the Commission has discretion, on a showing that such a hearing would disclose trade secrets or other data in itself destructive of the business under investigation, to do whatever is proper and necessary to avoid these consequences * * *."

SEC v. Harrison, 80 F.Supp. 226, 229 (D.D.C.1948): "* * * it must rest in the sound discretion of the agency created by the Congress, and not with the courts, to determine when investigations are to be conducted by open or closed hearings."

See also Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 321–322, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

The same rule should apply whether the question is raised in a proceeding brought by the agency to compel testimony or production of documents, or in a suit brought by a proposed witness or custodian of documents to restrain the inquiry. The standard applied in the former [that is, whether the administrative officer has acted "arbitrarily or in excess of his statutory authority," Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946), or whether the inquiry is authorized by law, the materials relevant, and the disclosure reasonable, Cooper, Federal Agency Investigations: Requirements for the Production of Documents, 60 Mich.L.Rev. 187 (1961–1962)] is in substance the same as that applied in the latter [that is, whether the process is "authorized by law," APA § 6(b), 5 U.S.C.A. § 1005(b), the evidence sought is of "general relevance and reasonable scope," APA § 6(c), 5 U.S.C.A. § 1005(c), or whether the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." APA § 10(e), 15 U.S.C.A. § 1009(e)].

ord.[11] The inquiry is purely investigative; its sole purpose is to secure information to aid the Commission in the discharge of its functions; it "is not intended to and cannot adjudicate the rights of any person." [12] The subject matter of the inquiry is "complex and generally unknown," and involves "many-sided transactions" among "networks, advertising agencies, program producers, program packagers, talent agencies" and others. Therefore, in order "to obtain a full and rounded picture of such transactions, it is highly desirable" that the information supplied by each group or individual be disclosed so that the others "may verify, refute, explain, amplify or supplement the record from their own diverse points of view." Moreover, through public hearings the industry may be made aware of the factual basis supporting any administrative action ultimately taken, a practical inducement to industry acceptance of the inquiry's results.[13] These factors, it may be noted, are largely of a kind falling within the special competency of the administrative agency to perceive and to evaluate.

Having determined that the public interest required public disclosure, the Commission properly placed the burden of justification upon those who asked that the evidence sought from them be received in confidence.[14]

It cannot be said with reason that the Commission acted arbitrarily or in abuse of discretion in determining that Schreiber and MCA failed to discharge their burden of justifying nondisclosure.

A. *As to Annex B*

Schreiber testified that the information sought by Annex B would disclose MCA's agency relationship with clients, and that under a contract between the Screen Actors Guild and Artists & Managers Guild such relationships were not to be disclosed without the clients' consent. He further stated that the disclosure "would be possibly advantageous to our competitors." No more was shown.

Obviously, a private agreement not to disclose facts without consent could not affect the Commission in the discharge of its public duties.[15] And there was no actual showing, but only the naked assertion, that the disclosure sought by Annex B would injure either MCA or its clients.

Annex B called only for the production of a list of programs as to which MCA served as "packager" or had a financial interest,[16] and MCA's competitors had

11. See note 3 of this court's opinion.

12. For a development of the argument that the need for nonpublic hearings is greater where investigatory hearings are preliminary to enforcement proceedings, rather than, as here, for the purpose of gathering information for rule-making or legislation, see Note, The Distinction between Informing and Prosecutorial Investigations: A Functional Justification for "Star Chamber" Proceedings, 72 Yale L.J. 1227 (1963).

13. "In such investigations a primary function of the process is to reach an external audience which includes the Congress, those segments of the public which are primarily affected by the agency's regulatory policies, and the body politic itself. While the use of public hearings is not strictly necessary for the dissemination of the information produced, the publicity generated by the gathering of raw rata may contribute substantially to the effec-

tiveness of the informing process." Note, 72 Yale L.J. 1227, 1236 (1963).

14. See, e. g., Graber Mfg. Co. v. Dixon, C.A.D.C., 223 F.Supp. 1020 (1963): "Of course, the public interest in open hearings places the burden on the plaintiffs to show that their documents should be received in confidence." Section 3(c) of APA, 5 U.S.C.A. § 1002(c) provides: "Save as otherwise required by statute, matters of official record shall in accordance with published rule be made available to persons properly and directly concerned except information held confidential *for good cause found*." (Emphasis added.) Cf. authorities cited note 24 infra.

15. 8 Wigmore, Evidence § 2286 (McNaughton rev. 1961).

16. Customer lists are not entitled to protection per se, but only when the circumstances establish that disclosure would result in competitive injury. See, e. g.,

**532**

furnished the same information on the public record without objection.[17] The presiding officer had in the past protected from disclosure detailed information regarding financial matters and contractual arrangements which might in fact harm private interests without sufficient compensatory benefit to the public, and had offered to take the same action if information produced by MCA justified such treatment. He declined only, on the record made, to receive the information under a binding condition preventing disclosure, imposed in advance of production.

On this record, affirmance by the Commission of the presiding officer's action as to the material sought by Annex B was clearly proper.

### B. Blanket Nondisclosure

On remand to the presiding officer a broader contention developed. Schreiber and MCA then argued that *all* testimony and documentary evidence to be elicited from them should be received in non-public sessions, and disclosed only if a court, in subsequent litigation, should order its release.

They made no factual showing before the presiding officer in support of this sweeping demand, but only an argument.

Schreiber and MCA contended that in view of the announced scope of the inquiry the Commission's order to produce "all * * * relevant" material might require MCA "to set forth in a public record every facet of its business" relating to television programing, and that such a disclosure, if demanded, would

necessarily expose confidential business secrets to MCA's competitors.

The presiding officer did not know what information would actually be sought. Obviously he could not strike a balance between the public benefit which would result from public disclosure of unidentified information and the injury which MCA would suffer by the revelation of the unspecified data to its competitors. If and when information was requested which if disclosed might injure MCA's competitive interests, there would be ample opportunity to request that it be received in confidence, and to seek judicial protection if the request were denied. Blanket nondisclosure would have been appropriate only on the assumption that no testimony could be elicited from Schreiber and no documents could be obtained from MCA which could be publicly disclosed. There was no warrant for such an assumption.

The presiding officer [18] acted well within his discretion in refusing to order blanket nondisclosure upon such a record.

In the District Court, as in this court, Schreiber and MCA conceded that no one knew what information Schreiber and MCA might be asked to produce. They asserted that an order requiring *in camera* hearings was nonetheless reasonable because the District Court could properly "assume" from questions asked of prior witnesses, and financial and corporate data from public sources introduced in the record, that the Commission intended "to probe deeply into the business affairs of MCA," and therefore could properly find, "that the testimony to be given might result in disclosure

---

Ellis, Trade Secrets § 72 (1953); Barton, A Study in the Law of Trade Secrets, 13 U.Cinc.L.Rev. 507, 526–29 (1939); In re H. P. Hood & Sons, Inc., No. 7709, FTC, March 15, 1961, 11 Pike & Fischer, Admin.Law (2d) 116 (1962). See also Schenley Industries v. Institutional Products Corp., 16 F.R.D. 13, 15 (S.D. N.Y.1954).

17. Schreiber also provided, without objection, a list of programs as to which MCA had acted as producer rather than as packagers, called for by Annex A.

18. On review of the presiding officer's first order, the Commission, although dealing with the merits of that order, held "that orders and directions of the Presiding Officer as to relevance and public disclosure of evidence, information and data are interlocutory in nature, do not of themselves 'aggrieve' any person, and are not, as of right, appealable to the Commission." This holding precluded an application to the Commission for review of the presiding officer's second order.

of trade-secrets, of which competitors might take advantage." 201 F.Supp. at 425.

Obviously this "showing" added nothing of substance to that made before the presiding officer, and the District Court's "finding" was no more than conjecture. It remained wholly speculative whether the Commission would seek data which if disclosed to competitors would injure MCA, and whether, if such data were sought, the presiding officer would require disclosure even though a balancing of public and private rights required nondisclosure. At best, the District Court's order was premature, and possibly wholly unnecessary. Moreover, it permitted Schreiber and MCA to avoid submitting to the presiding officer the issue of whether particular evidence should be received *in camera,* and violated the rule that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Further, the District Court's order necessarily assumed that if the issue were presented to the presiding officer he would decide it improperly, although an administrative agency, no less than a court, is entitled to a presumption that it will act properly and according to law.[19]

It is no answer to say that the District Court did not finally decide that the evidence must be kept confidential, but only deferred that determination until the taking of the evidence was completed and the record again submitted to judicial review.

As the Commission points out, there was at least a final determination that there should be no disclosure in the interim. During this period at least the Commission could not make the evidence available to Congress[20] and others outside the agency having a continuing, legitimate interest in the problems involved; and the Commission would be denied the benefit of evidence from others in the industry, stimulated by the testimony of these witnesses, and serving to verify, amplify or contradict it. And the period of concealment would inevitably be long—Schreiber and MCA appeared before the presiding officer in response to subpoena on October 21, 1960, and the issues then raised are not yet resolved.

Moreover, the court's order required the Commission ultimately to establish the specific need for publication,[21] thus shifting the burden of justification away from the person seeking concealment, where it properly rests.[22]

Analogies[23] drawn from authorities under Rules 30(b) and 45(b) and (d) of

---

19. In re Groban, 352 U.S. 330, 336, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957) (Frankfurter, J., concurring).

20. The Commission is required to report annually to Congress "such information and data collected by the Commission as may be considered of value in the determination of questions connected with the regulation of * * * radio communication * * *." 47 U.S.C.A. § 154 (k) (1).

21. The court's order provided, "the Commission . . . may move the court upon the conclusion of such interrogation and production for an order, should good cause exist therefor, permitting such testimony and documents to be made public * * *."

22. See note 14 supra.

23. Rule 81(a) (3) provides that the Federal Rules of Civil Procedure apply "to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States * * *." It was held in Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D. C. 106, 280 F.2d 654 (1960), that because of this provision of Rule 81(a) (3) the limitations found in Rules 30(b) and 45(b) and (d) are directly applicable to administrative subpoenas. This result, however, fails "to observe the important distinction between the administrative proceeding * * * and the court action to enforce the summons * * * Rule 81(a) (3) makes the Rules of Civil Procedure applicable * * * to the court action to enforce the summons * * *.

the Federal Rules of Civil Procedure demonstrate the soundness of the presiding officer's decision, and the error in the District Court's contrary ruling.

Under these authorities, a person seeking a protective order in discovery proceedings has the burden of justifying it; and a general assertion that business secrets may be disclosed is not enough.[24] Ordinarily, the questioning of witnesses and production of documents will not be limited in advance on the ground that disclosure of privileged material may be sought. The court will not speculate as to what data may actually be requested. The privilege must be asserted when specific demands are made.[25] And discovery should not be interrupted while application is made for a protective order as to each demand; it should be completed, and all questions of privilege submitted to the court in a single application which can then be evaluated in light of the full record.[26]

As a whole, these rules suggest the wisdom of restraint in the issuance of anticipatory protective orders to avoid premature and probably needless interference with the process of discovery. This underlying premise applies with special force to the present case for here the District Court was not dealing with an application for a protective order by a party subjected to unsupervised discovery, but rather with review of a determination made by a neutral presiding officer in a specialized administrative proceeding. Application for orders protecting trade secrets under Rules 30(b) and 45(b) and (d) are directed largely to the discretion of the trial judge,[27] but it was the presiding officer (by analogy) who stood in this position, not the District Court.

The discretion vested in the presiding officer was not abused by the denial, on this record, of the demand for blanket nondisclosure.

## II

It may be conceded that witnesses before purely investigative bodies have no constitutional right to the aid of an attorney.[28]

To contend that the proceeding itself before the Commissioner * * * is also a civil case subject to the Rules of Civil Procedure * * * would be going too far." Falsone v. United States, 205 F.2d 734, 742 (5th Cir. 1953). See also 7 Moore's Federal Practice § 81.06 [1] (2d ed. 1955) ; 5 Moore's Federal Practice § 45.01 [2] (2d ed. 1951) ; 2B Barron & Holtzoff, Federal Practice & Procedure 281–82 (Rules ed. 1961). It therefore appears that decisions under Rules 30(b) and 45(b) and (d) are applicable to protective orders with respect to administrative subpoenas only by way of analogy. This would be true whether the protective order is sought from the agency or the court.

24. See, e. g., Sacks v. Frank H. Lee Co., 18 F.R.D. 500 (S.D.N.Y.1955); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 18 F.R.D. 318, 322 (S.D.N.Y.1955); 4 Moore's Federal Practice 2024, 2034 n. 1a (2d ed. 1963); 2A Barron & Holtzoff, Federal Practice & Procedure 235–36 (Rules ed. 1961). See also 8 Wigmore, Evidence § 2212 (McNaughton rev. 1961).

25. See, e. g., Alexander's Dep't Stores Inc. v. E. J. Korvette, Inc., 198 F.Supp. 28, 29 (S.D.N.Y.1961); Brockway Glass Co. v. Hartford-Empire Co., 36 F.Supp. 470, 472 (W.D.N.Y.1941); Nekrasoff v. United States Rubber Co., 27 F.Supp. 953, 956 (S.D.N.Y.1939); Independent Productions Corp. v. Loew's, Inc., 22 F.R.D. 266, 279 (S.D.N.Y.1958), and 28 F.R.D. 19, 21 (S.D.N.Y.1961); Shiner v. American Stock Exch., 28 F.R.D. 34 (S.D.N.Y.1961); Continental Distilling Corp. v. Humphrey, 17 F.R.D. 237, 241 (D.D.C.1955); United States v. Lustig,. 16 F.R.D. 138 (S.D.N.Y.1954); Folley Amusement Holding Corp. v. Randforce Amusement Corp., 1 F.R.D. 496, 498 (S.D.N.Y.1940); 4 Moore's Federal Practice 1294.

26. See, e. g., Young v. Motion Picture Ass'n of America, Inc., 28 F.R.D. 2, 5–7 (D.D.C.1961); Smith v. Crown Publishers Inc., 14 F.R.D. 514 (S.D.N.Y. 1953); Jacobowitz v. Kremer, 7 F.R.D. 110, 111 (S.D.N.Y.1946).

27. See A. H. Robins Co. v. Fadley, 299 F.2d 557, 561–562 (5th Cir. 1962).

28. See In re Groban, 352 U.S. 330, 333, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957). See also Anonymous Nos. 6 and 7 v. Baker, 360 U.S. 287, 79 S.Ct. 1157, 3 L.Ed.2d 1234 (1959).

However, the language and legislative history of Section 6(a) of the Administrative Procedure Act indicate that Congress intended to grant to witnesses [29] compelled to appear in agency investigations [30] "the right to be accompanied, represented, and advised by counsel." This view is supported by all of the decided cases [31] and by the leading commentaries on the Act.[32] Schreiber and

---

**29.** The first sentence of § 6(a) (5 U.S.C.A. § 1005(a)) applies to "any person compelled to appear" as distinguished, in the second sentence, from "Every party." The distinction is carefully preserved in comments on § 6(a) in the House Committee Report, H.R.Rep. No. 1980, 79th Cong., 2d Sess. 31–32 (1946), reprinted in S.Doc. No. 248, 79th Cong., 2d Sess. 263–64 (1946), and by Senator McCarran on the floor of the Senate. 92 Cong.Rec. 2156 (1946).

**30.** The provisions of § 6 apply broadly "except as otherwise provided" in the Act, and the § 6(a) right to counsel is accorded whenever a person is "compelled to appear in person before any agency or representative thereof," without qualification as to the type of agency proceeding which may be involved, in contrast, for example, with § 7 which by its terms is limited to rule-making and adjudicatory proceedings under §§ 4 and 5. The House Committee Report stated that § 6(a) "is a statement of statutory and mandatory right of interested persons to appear themselves or through or with counsel before any agency in connection with any function, matter, or process whether formal, informal, public, or private." H.R.Rep. No. 1980, 79th Cong., 2d Sess. 31–32 (1946), reprinted in S.Doc. No. 248, 79th Cong., 2d Sess. 263–64 (1946).

**31.** See Backer v. Commissioner, 275 F.2d 141 (5th Cir. 1960); Wanderer v. Kaplan, D.D.C., Civil No. 2819–62, Oct. 30, 1962, 1962 CCH Trade Cases ¶¶ 70462 and 70535; Hall v. Lemke, N.D.Ill., Civil No. 62C942, May 7, 1962, 1962 CCH Trade Cases ¶ 70338 (restraining order), see Comment, 72 Yale L.J. 1227 (1963); In re Neil, 209 F.Supp. 76 (S.D.W.Va. 1962); United States v. Fancher, 195 F.Supp. 448, 457 n. 18 (D.Conn.1961); Application of Levine, 149 F.Supp. 642, 643 (S.D.N.Y.1956); and United States v. Smith, 87 F.Supp. 293, 294 (D.Conn. 1949). See also In re Mead Corp., No. 571–0656, FTC, Jan. 3, 1963, 13 Pike & Fischer, Admin.Law (2d) 117 (1963). Cf. Torras v. Stradley, 103 F.Supp. 737, 739 (N.D.Ga.1951).

In context the statement in Hannah v. Larche, 363 U.S. 420, at 445, 80 S.Ct. 1502 at 1516, 4 L.Ed.2d 1307 (1960) that agencies when making quasi-judicial determinations are subject to the Administrative Procedure Act, does not mean that the Court thought the Act as a whole was inapplicable to investigative hearings. When at 452–453 of 363 U.S., at 1520 of 80 S.Ct., 4 L.Ed.2d 1307 the Court rejected the argument that § 7 of the Act applied to the investigative hearings of the Civil Rights Commission, it did not do so on the ground that the Act as a whole was inapplicable to such hearings, but rather upon the narrow ground that § 7 by its terms applied only to rule-making and adjudication.

**32.** The Administrative Conference of the United States (created pursuant to Exec. Order No. 10934, Apr. 13, 1961) recently indicated that in its view § 6(a) was applicable "in all agency actions and proceedings, including both public and non-public investigations." Bull. No. 7, Administrative Conference of the United States, July 2, 1962, titled "Report of the Fourth Plenary Session, June 29, 1962," p. 4.

The Attorney General's Manual on the Administrative Procedure Act (1947) states (61–62) that § 6(a):

" * * * restates existing law and practice that persons compelled to appear in person before an agency or its representatives must be accorded the right to be accompanied by counsel and to consult with or be advised by such counsel. Such persons are also entitled to have counsel act as their spokesmen in argument and where otherwise appropriate. Senate Comparative Print of June 1945, p. 10 (Sen.Doc. p. 26). It is clear, of course, that this provision relates only to persons whose appearance is compelled or commanded, and does not extend to persons who appear voluntarily or in response to mere request by an agency. Where appearance is compelled, whether as a party or as a witness, the right to counsel exists."

The Report of the Commission on Organization of the Executive Branch of Government, Task Force Report on Legal Services and Procedure (1955) states (287–288):

"This [Section 6(a)] right was to be accorded in connection with any function, matter, or process, whether formal, informal, public, or private.

\* \* \* \* \*

"Agency restrictions upon the freedom of a witness or a party to be represented

MCA were therefore entitled to whatever assistance of counsel Section 6(a) conferred, and, in this court, the Commission has not contended to the contrary.[33]

It is unnecessary, in this case, to spell out all that "the right to be accompanied, represented, and advised by counsel" may comprehend. The District Court held that in a purely investigatory proceeding of the type involved here, Section 6(a) did not confer the right to cross-examine other witnesses, and Schreiber and MCA have not appealed from this determination. On the other side, the Commission allowed counsel for Schreiber and MCA to present and argue motions in advance of public hearings and to accompany Schreiber while the latter testified; and on this appeal the Commission has stated that it does not challenge the District Court's determination that counsel must also be permitted to "initiate advice to his client with respect to the propriety or legality of any question asked of his client and to advise his client not to answer any such question deemed improper." [34]

Thus the only issue presented on this aspect of the appeal is the validity of that portion of the District Court's order holding that Section 6(a) confers the right to have counsel object to questions put to his client, and state on the record concise grounds for such objections.

The ordinary meaning [35] of the phrase "represented * * * by counsel" would seem to imply this much. Indeed, to object to questions asked of a witness-client, and articulate the legal basis for the objections, is the function the witness-client is most likely to expect his attorney to perform, for it is within the attorney's exclusive competence.

The word "represented" was a deliberate addition to Section 6(a), and there is some evidence that it was added to enable counsel to communicate his advice to the presiding officer as well as to his client. A comment upon the insertion of the word, appearing in a Senate Judiciary Committee Print, suggests that "even where the party must be personally present * * * the representation by counsel may be helpful both to the agency concerned and the party." [36] And the statement in the Attorney General's Manual on the Administrative Procedure Act (1947) at page 61 that persons compelled to appear before an agency "are also entitled to have counsel act as their spokesmen in argument and where otherwise appropriate," conveys the same notion. In the course of the Congressional debate the right to counsel conferred by

by an attorney in good standing or other duly qualified person in administrative proceedings, whether investigatory or adjudicatory, not only contravene an important purpose of the Administrative Procedure Act, but also derogate from due process of law in the administrative process."

The pertinent portions of 1 Davis, Administrative Law § 8.10 (1958) are set out in this court's opinion.

See also Murchison, Rights of Persons Compelled to Appear in Federal Agency Investigational Hearings, 62 Mich.L.Rev. 485, 492–93 (1964); 26 Albany L.Rev. 276, 277–78 (1962); Newman, Federal Agency Investigations: Procedural Rights of the Subpoenaed Witness, 60 Mich.L.Rev. 169, 170–71 n. 12 (1961–1962); Newman, What Agencies Are Exempt from the Administrative Procedure Act, 36 Notre Dame Law 320 (1960–1961); Gellhorn & Byse, Administrative Law 595 (4th ed. 1960); 58 Colum.L.Rev. 395, 403–04 (1958).

33. At the oral argument the court asked, "You do not argue that it [§ 6(a)] is inapplicable to investigative proceedings?" Counsel for the Commission replied, "We do not, your Honor, we do not."

34. Paragraph 3(c) of the order. See note 4 of this court's opinion. This concession seems required by the literal language of § 6(a); the right to be "advised by counsel" must mean at least this.

35. "When Congress used the terms 'right to be accompanied, represented, and advised by counsel,' it must have used the language in the regularly accepted connotation * * *." Backer v. Commissioner, 275 F.2d 141, 144 (5th Cir. 1960).

36. Senate Judiciary Committee Print, issued May 1945, reprinted in S.Doc. No. 248, 79th Cong., 2d Sess. 26 (1946).

Section 6(a) was stated in the broadest terms.[37]

The Administrative Conference of the United States recently addressed itself to the precise question raised here. The Conference concluded:[38]

"The right to be 'represented' by counsel means as a minimum that counsel for any person compelled to appear in person shall be permitted to make objections on the record and to argue briefly the basis for such objections in connection with any examination of his client."

The Supreme Court's "approval" in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), of Rule 1.40 of the Federal Trade Commission's Rules of Practice (which allowed counsel for a subpoenaed witness to accompany and advise his client but "not, as a matter of right, otherwise participate in the investigation") is not inconsistent with this reading of Section 6(a). In Hannah the Supreme Court was commenting only upon whether Rule 1.40 met constitutional standards, not whether it satisfied Section 6(a) of the Administrative Procedure Act.[39] The Court referred with equal "approval" to the practice of the Securities and Exchange Commission limiting counsel for witnesses in investigative inquiries to advising the witness and "making objections to questions which assertedly exceed the scope of the order of investigation." 363 U.S. at 447 n. 26, 80 S.Ct. at 1517, 4 L.Ed.2d 1307.

The Commission contends that since "representation" is not defined in the Administrative Procedure Act, the participation by counsel which is to be permitted should be left to the discretion vested in the Commission by Section 4(j) of the Communications Act of 1934, and that the determination which the Commission has made in the present case is reasonable in the light of the type of inquiry involved.

Unquestionably a large measure of discretion over its procedures is vested in the Commission, as has been noted.[40] But the authority conferred upon the Commission by Section 4(j) of the Act of 1934 is limited by Section 6(a) of the Administrative Procedure Act.[41] The latter "is a statement of statutory and mandatory right." H.R.Rep.No.1980, 79th Cong., 2d Sess. 31–32 (1946), reprinted in S.Doc. No. 248, 79th Cong., 2d Sess. 263–64 (1946). Precisely what the right to be "represented * * *

---

37. Congressman Francis Walters stated on the floor of the House (92 Cong.Rec. 5652 (1946)):

"Section 6(a) deals with the right of parties to have the advice or representation of counsel or, to the extent that agencies lawfully permit it, representation by nonlawyers. The representation of counsel contemplated by the bill means full representation as the term is understood in the courts of law. Counsel may thus receive notices, decisions, and awards. Agencies are not authorized in any manner to ignore or bypass legal representatives that parties have selected for themselves pursuant to this section."

38. Bull. No. 7, Administrative Conference of the United States, July 2, 1962, titled "Report of the Fourth Plenary Session, June 29, 1962," p. 4. See Murchison, Rights of Persons Compelled to Appear in Federal Agency Investigational Hearings, 62 Mich.L.Rev. 485, 496 (1964).

39. Murchison, Rights of Persons Compelled to Appear in Federal Agency In-

vestigational Hearings, 62 Mich.L.Rev. 485, 493 (1964). After Hannah the Federal Trade Commission modified its rules to permit counsel, in public investigatory proceedings, to object to questions asked of his witness-client, to advise his client not to answer, and to state his reasons on the record. The Commission broadened witnesses' rights to the assistance of counsel in other respects, and indicated that it did not act wholly under the compulsion of § 6(a). It stated, however, "We are convinced that these rules effectuate the policy of Congress, and will not contribute to any 'regulatory lag' or delay investigational hearings." In re Mead Corp., No. 571–0656, FTC, Jan. 3, 1963, 13 Pike & Fischer, Admin.Law (2d) 117, 122 (1963). See 16 C.F.R. § 1.40.

40. Notes 6 and 10, supra, and related text.

41. American Communications Ass'n v. United States, 298 F.2d 648, 650 (2d Cir. 1962).

by counsel" comprehends may depend to some extent upon the nature of the inquiry, and other surrounding circumstances, but it cannot reasonably import less, as to a witness in an investigative proceeding, than the right to have counsel object to questions put to the witness and state his reasons in the record.[42]

---

42. Judge Yankwich's decision to this effect was followed by Judge McLaughlin in Wanderer v. Kaplan, D.D.C., Civil No. 2819–62, Oct. 30, 1962, 1962 CCH Trade Cases ¶ 70535, the only other reported decision in point.